J-A29023-16

2017 PA Super 131

| | |
|---|---|
| HOWARD WINDOWS, JR. AND ELEANOR WINDOWS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| ERIE INSURANCE EXCHANGE | |
| Appellant | No. 362 WDA 2016 |

Appeal from the Judgment Entered February 24, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-13-007822

BEFORE:  DUBOW, J., MOULTON, J., and MUSMANNO, J.

OPINION BY MOULTON, J.:                                    **FILED MAY 1, 2017**

Erie Insurance Exchange ("Erie") appeals from the February 24, 2016 judgment entered in the Allegheny County Court of Common Pleas in favor of Howard Windows, Jr. and Eleanor Windows ("Homeowners").  We reverse and remand for further proceedings.

This matter arises from Erie's denial of an insurance claim made by the Homeowners following the infiltration of raw sewage into their home in May 2012.  Erie denied the claim, and on May 2, 2013, the Homeowners filed a complaint, alleging that Erie breached its policy.  On March 9, 2015, Erie filed a motion for summary judgment, arguing that the policy's "general exclusion for water damage unambiguously excludes coverage for the Homeowners' losses because the back up of raw sewage and water through

the Warner Alley sewer system and the drain in the Homeowners' basement contributed to their losses." Erie's Mot. for S.J., at ¶ 25.[1]

On June 16, 2015, the Honorable Paul F. Lutty, Jr. denied the motion in a one-line order. Before trial, Erie presented a motion *in limine*, arguing that the law of the case did not apply and that Erie should not be precluded from presenting evidence of its coverage defense, *i.e.*, that the insurance policy did not cover the Homeowners' claims based on the water-damage exclusion. The trial judge, the Honorable Michael E. McCarthy, denied the motion and ruled that Judge Lutty's order "operat[ed] as at least for that limited purpose the law as to the case as to whether Exclusion 2B applies,

_____

[1] The water-damage exclusion at issue provides:

### WHAT WE DO NOT COVER – EXCLUSIONS

**We** do not pay for loss resulting directly or indirectly from any of the following, even if other events or happenings contributed concurrently, or in sequence, to the loss:

. . .

2. by water damage, meaning:

. . .

> b. water or sewage which backs up through sewers or drains or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area;

. . .

Erie's Mot. for S.J., Exh. I, Extracover Amendatory Endorsement, at 1 (bold font in original).

that is the water damage," N.T., 11/30/15, at 9, and "defer[red] to Judge Lutty's determination that exclusion 2(b) of the policy could not be construed to preclude plaintiffs' claim," Opinion, 5/9/16, at 3 ("1925(a) Op."). The case proceeded to trial, and on December 2, 2015, the jury returned a verdict in favor of the Homeowners and awarded $75,073.56 in damages.

On December 9, 2015, Erie filed a post-trial motion seeking a new trial, arguing that the trial court erred in concluding that the denial of Erie's summary judgment motion had established the law of the case, thereby denying Erie a trial on whether insurance coverage for the Homeowners' losses existed and whether the water-damage exclusion applied. On January 27, 2016, the trial court denied Erie's motion. On February 24, 2016, the trial court entered judgment in the Homeowners' favor. On March 8, 2016, Erie filed a timely notice of appeal.

Erie raises the following issues on appeal:

> 1. Whether the Honorable Paul F. Lutty, Jr. abused his discretion or committed an error of law in denying Erie's Motion for Summary Judgment where the undisputed material facts established that water or sewage that backed up through sewers or drains caused or contributed to the [Homeowners'] losses such that these losses were excluded from coverage under the [Homeowners'] insurance policy's exclusion of losses caused by "water damage."
>
> 2. Whether the Honorable Michael E. McCarthy abused his discretion or committed an error of law in denying Erie's Motion for Post-Trial Relief where he held that Judge Lutty's summary denial of Erie's motion for Summary Judgment without opinion constituted the law of the case

- 3 -

as to the application of the policy's exclusion for "water damage," and therefore held, as a matter of law and without the benefit of trial or fact-finding by a jury, that the policy's exclusion for "water damage" did not exclude any of the [Homeowners'] losses.

Erie's Br. at 3.

We first address Erie's challenge to Judge Lutty's denial of its motion for summary judgment.

> When reviewing a trial court's grant of summary judgment, our standard and scope of review are as follows:

> [O]ur scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: [A]n appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo*.

> Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a prima facie cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

***Reinoso v. Heritage Warminster SPE LLC***, 108 A.3d 80, 84 (Pa.Super.), *app. denied*, 117 A.3d 298 (Pa. 2015) (alterations in original) (quoting ***Mull v. Ickes***, 994 A.2d 1137, 1139–40 (Pa.Super. 2010)). "With respect to the

denial of summary judgment, `[w]e review the trial court's denial of summary judgment for an abuse of discretion or error of law.'" **Bezjak v. Diamond**, 135 A.3d 623, 627 (Pa.Super.), *app. denied*, 145 A.3d 722 (Pa. 2016) (alteration in original) (citation omitted).

On summary judgment, Erie argued that the water-damage exclusion unambiguously precluded coverage for the Homeowners' losses. We disagree.

"A defense based on an exception or exclusion in a policy is an affirmative one, and the burden is cast upon the defendant to establish it." **Erie Ins. Exch. v. Transamerica Ins. Co.**, 533 A.2d 1363, 1366 (Pa. 1987) (quotation omitted). Because "[i]nsurance policies are contracts, [] the rules of contract interpretation provide that the mutual intention of the parties at the time they formed the contract governs its interpretation." **Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.**, 2 A.3d 526, 540 (Pa. 2010). "While courts are responsible for deciding whether, as a matter of law, written contract terms are either clear or ambiguous; it is for the fact[-]finder to resolve ambiguities and find the parties' intent." **Metzger v. Clifford Realty Corp.**, 476 A.2d 1, 5 (Pa.Super. 1984).

> A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. The "reasonably" qualifier is important: there is no ambiguity if one of the two proffered meanings is unreasonable. **See Murphy v. Duquesne Univ. Of The Holy Ghost**, [] 777 A.2d 418, 430 (Pa. 2001) ("[C]ontractual terms are ambiguous if they are subject to more than one reasonable

interpretation when applied to a particular set of facts." (emphasis added)). Furthermore, reviewing courts will not distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity. **Finally, while ambiguous writings are interpreted by the finder of fact, unambiguous ones are construed by the court as a matter of law**.

*Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 483 (Pa. 2009) (emphasis added) (some citations omitted). It is well-settled that "[w]here a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Prudential Prop. & Cas. Ins. Co. v. Sartno*, 903 A.2d 1170, 1174 (Pa. 2006) (quoting *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)); *see also Egyptian Sands Real Estate, Inc. v. Polony*, 294 A.2d 799, 803 (Pa.Super. 1972) ("Under general contract rules, a promise . . . if ambiguous, [] will be construed [*c*]ontra proferentum, against the party having drafted it.") (italics added) (footnote omitted). However,

> it is equally clear that the rule is not intended as a talismanic solution to the construction of ambiguous language. Rules of construction serve the legitimate purpose of aiding courts in their quest to ascertain and give effect to the intention of parties to an instrument. They are not meant to be applied as a substitute for that quest. Where a document is found to be ambiguous, inquiry should always be made into the circumstances surrounding the execution of the document in an effort to clarify the meaning that the parties sought to express in the language which they chose. It is only when such an inquiry fails to clarify the ambiguity that the rule of construction . . . should be used to conclude the matter

against that party responsible for the ambiguity, the drafter of the document.

***Burns Mfg. Co. v. Boehm***, 356 A.2d 763, 767 n.3 (Pa. 1976) (citations omitted). When an ambiguity in contractual language exists, "parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances."

***Miller v. Poole***, 45 A.3d 1143, 1146 (Pa.Super. 2012). While

> [t]his Court may determine the existence of an ambiguity as a matter of law, [] the resolution of conflicting parol evidence relevant to what the parties intended by the ambiguous provision is for the trier of fact. Where the words used in a contract are ambiguous, the surrounding circumstances may be examined to ascertain the intent of the parties.

***Walton v. Philadelphia Nat'l Bank.***, 545 A.2d 1383, 1389 (Pa.Super. 1988).

Here, the water-damage exclusion in the Homeowners' insurance policy provides that losses caused by "water or sewage which backs up through sewers and drains" are excluded from coverage. The policy does not define the term "backs up." The parties, and the extremely limited relevant case law, suggest two possible meanings of the term. Erie argues that a "back up" pursuant to the policy occurs "whenever [water and sewage] flow[s] into a dwelling through drains or pipes that normally carried such effluent out of the premises." Erie's Br. at 23-24 (citing ***Jennings v. Hartford Fire Ins. Co.***, 1991 WL 68019, at *2 (E.D. Pa. Apr. 25, 1991);

- 7 -

***Gammons v. Tennessee Farmers Mut. Ins. Co.***, 1986 WL 13039, at \*3 (Tenn. Ct. App. Nov. 19, 1986) ("We find that the phrase 'water which backs up through sewers or drains' refers simply to water in a sewer or drain that flows in a direction opposite to the intended and usual flow.")).  In other words, Erie argues that any water or sewage that enters the premises through a sewer line or drain pipe, no matter where it originated, has "backed up" into the premises.

The alternative interpretation is that water or sewage "backs up" through drains only when it returns to the premises from whence it came. This position was adopted by the Court of Appeals of Indiana, interpreting a similar insurance policy water-damage exclusion.  ***See Thompson v. Genis Bldg. Corp.***, 394 N.E.2d 242, 245 (Ind. Ct. App. 1979)); Erie's Br. at 26 (citing ***Thompson***); ***see also*** Homeowners' Br. at 18 (sewage flow in this case "does not fit the definition of a backup").  The ***Thompson*** court concluded that to "back up" means to "rise and overflow backward" when checked, and therefore held that water flowing directly from a sewer line into a basement has not "backed up" within the meaning of the insurance policy in question.   The ***Jennings*** court explicitly disagreed with this interpretation of "back up." ***Jennings***, 1991 WL 68019, at \*2.[2]

---

[2] We note that none of the cited cases constitutes authority binding on this Court.

Based on the language of the Erie policy, and on the limited case law interpreting similar language, we conclude that the water-damage exclusion is subject to more than one reasonable interpretation. Because the provision is ambiguous, Erie failed to meet its burden at summary judgment of proving that the Homeowners' loss was necessarily excluded. Accordingly, Judge Lutty did not abuse his discretion or commit an error of law in denying Erie's motion for summary judgment.

Next, we turn to Erie's contention that Judge McCarthy erred in finding that Judge Lutty's denial of Erie's summary judgment motion established the law of the case. Here, we agree with Erie.

> The law of the case doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter. . . . The various rules which make up the law of the case doctrine serve not only to promote the goal of judicial economy . . . but also operate (1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end.

***Commonwealth v. McCandless***, 880 A.2d 1262, 1267 (Pa.Super. 2005) (quoting ***Commonwealth v. Starr***, 664 A.2d 1326, 1331 (Pa. 1995)). Absent extraordinary circumstances, the doctrine bars a judge from revisiting a ruling previously decided by another judge of the same court. ***Commonwealth v. Lancit***, 139 A.3d 204, 206 (Pa.Super.), *app. denied*, ---

A.3d ----, 2016 WL 7387073 (Pa. Dec. 21, 2016). "In determining whether the law of the case doctrine applies, the appellate court 'looks to where the rulings occurred in the context of the procedural posture of the case.'" ***Mohney v. Am. Gen. Life Ins. Co.***, 116 A.3d 1123, 1132 (Pa.Super. 2012) (citation omitted). Our Supreme Court has cautioned that

> [i]n some circumstances, however, application of the rule can thwart the very purpose the rule was intended to serve, *i.e.*, that judicial economy and efficiency be maintained. Thus we [have said] that departure from the rule of coordinate jurisdiction is allowed where the prior holding was clearly erroneous and would create a manifest injustice if followed. Moreover, the rule does not apply where two motions differ in kind, then a second judge is not precluded from granting relief though another judge has denied an earlier motion. The rule does not apply when distinct procedural postures present different considerations, then a substituted judge may correct mistakes made by another judge at an earlier stage of the trial process, or, perhaps more accurately, may revisit provisional rulings made earlier in the litigation.

***Gerrow v. John Royle & Sons***, 813 A.2d 778, 782 (Pa. 2002) (internal citations and quotation marks omitted).

Judge McCarthy concluded in his Pennsylvania Rule of Appellate Procedure 1925(a) opinion that he understood Judge Lutty to have concluded that the water-damage exclusion "could not be construed to preclude plaintiffs' claim." 1925(a) Op. at 3. This interpretation of Judge Lutty's denial of summary judgment, however, is not compelled by the record. As noted above, Lutty's order does not contain his rationale for denying the motion. While he may have concluded that the water-damage

- 10 -

exclusion did not apply at all, he instead may have believed it ambiguous, requiring further litigation to determine its meaning. Or he may have concluded that there was a genuine issue of material fact, such as whether some or all of the infiltration of raw sewage and water into the Homeowners' basement occurred due to a "back up" within the meaning of the water-damage exclusion. Based on the record, and in the absence of an opinion, we cannot determine the precise basis for Judge Lutty's decision, and it would be improper to speculate what his rationale may have been. **See Solcar Equip. Leasing Corp. v. Pennsylvania Mfrs.' Ass'n Ins. Co.**, 606 A.2d 522, 526 (Pa.Super. 1992) ("We do not have the benefit of [the judge's] rationale; nor are we a fact-finding entity which is entitled to speculate.").

Judge McCarthy erred by reading into the denial of summary judgment a legal conclusion neither articulated by Judge Lutty nor necessary to that denial. As a result, his ruling that the law of the case precluded further litigation over the water-damage exclusion was incorrect. The question remains, however, what consequences now flow from that conclusion. We have presently concluded that the exclusion is ambiguous. This ambiguity should have been resolved below; and but for the "law of the case" ruling, it

- 11 -

could have been.[3] Furthermore, the ruling precluded the parties from litigating whether a "back up" occurred within the meaning of the exclusion following resolution of the ambiguity.

Accordingly, we reverse the judgment and remand for further proceedings consistent with this opinion.

Judgment reversed. Case remanded. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/1/2017

---

[3] Parol evidence, if it exists, may be used to allow the fact-finder to determine the parties' intent and to resolve the ambiguity. If parol evidence does not exist, then interpretation is purely a matter of law, which falls to the court. In the latter situation, according to principles of contract interpretation, the provision would be construed against the drafter of the document, Erie, and in favor of the Homeowners.