J-A11028-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| UNITED TELEPHONE COMPANY OF PENNSYLVANIA, LLC D/B/A CENTURYLINK | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| M2J2S, LLC D/B/A SERVICEMASTER RESTORATION SERVICES, MICKEY RAPP AND JESSIE BOCK | |
| Appellees | No. 1517 MDA 2016 |

Appeal from the Order Entered August 16, 2016
In the Court of Common Pleas of Cumberland County
Civil Division at No(s): 2015-04421

BEFORE:  SHOGAN, J., MOULTON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MOULTON, J.:          **FILED SEPTEMBER 05, 2017**

United Telephone Company of Pennsylvania, LLC, doing business as CenturyLink ("CenturyLink"), appeals from the August 16, 2016 order entered in the Cumberland County Court of Common Pleas overruling in part its preliminary objections to the complaint[1] filed by M2J2S, LLC, doing

---

[*] Former Justice specially assigned to the Superior Court.

[1] Co-plaintiffs Mickey Rapp and Jessie Bock asserted claims against CenturyLink, which were dismissed by the trial court.  Rapp and Bock have not appealed from that decision.

business as ServiceMaster Restoration Services ("ServiceMaster").[2] Because the trial court erred in construing the arbitration clause at issue, we reverse and remand for further proceedings.

This case arises from a contract between CenturyLink and ServiceMaster for the remediation of a property leased by CenturyLink.[3] CenturyLink hired ServiceMaster to perform an emergency remediation of the property, which had suffered extensive water damage and mold contamination. On June 11, 2015, ServiceMaster and CenturyLink signed an authorization for repairs and payment, stating that CenturyLink was hiring ServiceMaster to do emergency roof leak and mold remediation services. They also signed a "statement of authorization for mold," which included the following arbitration clause:

> Any dispute between Owner [(CenturyLink)] and ServiceMaster (including the interpretation of this Agreement), except for non-payment of invoices for **ServiceMaster's** work, shall be submitted to binding arbitration . . . . The arbitration shall be binding on all

---

[2] We note that ServiceMaster's brief contains numerous citations to unpublished memoranda of this Court. "[P]ursuant to this [C]ourt's internal operating procedures, '[a]n unpublished memorandum decision shall not be relied upon or cited by a Court or a party in any other action or proceeding,' subject to certain limited exceptions not relevant here." **Dubose v. Quinlan**, 125 A.3d 1231, 1247 n.6 (Pa.Super. 2015), *app. granted in part*, 138 A.3d 610 (Pa. 2016). We caution counsel to refer to the Superior Court Internal Operating Procedures when practicing before this Court.

[3] ServiceMaster asserts that CenturyLink held itself out as the owner of the subject property.

parties and judgment may be entered in any court having jurisdiction.

Stmt. of Auth. for Mold, 6/11/15, ¶ 7 (bold in original). At the time of the agreement, CenturyLink had indicated that there was no asbestos in the building, and representatives of both companies walked through and saw no asbestos "hot spots," which would have been marked with orange paint. ServiceMaster began work immediately.

According to ServiceMaster, once it began work, CenturyLink interfered in numerous ways, the most serious of which was a site visit by a CenturyLink contractor who, without wearing personal protective equipment, removed materials from the property for asbestos testing. After this incident, ServiceMaster and CenturyLink quarreled over the presence of asbestos on the property.[4]

On July 23, 2015, CenturyLink sent ServiceMaster a notice of claims, "which claimed . . . breaches of contact, claims of contractual undertakings, and violation of asbestos removal and disposal regulations." Compl. ¶ 127.

_____

[4] According to the complaint, ServiceMaster claimed that any materials in the building contained less than 2% asbestos, whereas CenturyLink claimed that certain materials contained as much as 7% asbestos. CenturyLink sent a letter reporting the contamination to the Pennsylvania Department of Environmental Protection ("DEP"), which ServiceMaster claims was fraudulent and deceptive. ServiceMaster accused CenturyLink of failing to report that CenturyLink had allowed work to continue on the property and served to "scapegoat ServiceMaster, conceal material acts and omissions of CenturyLink, and trick [the] DEP in according CenturyLink safe harbor." Compl. ¶ 111.

ServiceMaster responded to these allegations; CenturyLink did not reply except to inform ServiceMaster that it had received its response.

On August 12, 2015, ServiceMaster filed a writ of summons in the trial court. On September 10, 2015, according to ServiceMaster, CenturyLink notified ServiceMaster that there was a "serious asbestos issue" for which "Centurylink was claiming approximately $164,000 in offset claims in relation to the work." *Id.* ¶ 145. The next day, counsel for ServiceMaster responded to those claims and sent an acceptance of service form with a copy of the writ of summons, asking CenturyLink's counsel to accept service on behalf of CenturyLink as previously promised. On September 16, 2015, CenturyLink's counsel sent, according to ServiceMaster, another "false and fraudulent demand for immediate payment by ServiceMaster to CenturyLink of $164,000." *Id.* ¶ 151.

On October 19, 2015, CenturyLink filed preliminary objections to ServiceMaster's complaint, which included a preliminary objection based on lack of subject matter jurisdiction. CenturyLink asserted that the arbitration clause in the contract required the parties to arbitrate this matter. According to CenturyLink,

> [t]he dispute at issue . . . [was] ServiceMaster's breach of contract, including advising CenturyLink that there was no asbestos present in the area where the mold abatement work was to be completed and performing unlicensed demolition of asbestos-containing materials, which subsequently required CenturyLink to spend significant sums investigating and completing clean-up and incur costs for lost use of lease space and obtaining alternate facilities.

Prelim. Obj., 10/19/15, ¶ 16.   CenturyLink asserted that "because the dispute at issue is ServiceMaster's breach of contract, this matter must be arbitrated and the [trial court is] without subject matter jurisdiction." *Id.* at ¶ 18.

ServiceMaster did not file a written response to the preliminary objections, but instead requested argument.  After argument, on August 15, 2016, the trial court overruled CenturyLink's preliminary objection based on lack of subject matter jurisdiction, concluding that the arbitration clause excepted claims involving non-payment of ServiceMaster's invoices and, because ServiceMaster alleged CenturyLink's non-payment of invoices, ServiceMaster properly filed suit in the trial court.[5]  On September 15, 2016, CenturyLink timely appealed to this Court.[6]

---

[5] As a result of the trial court's ruling, CenturyLink filed an answer with new matter and counterclaims on September 9, 2016.

[6] On September 15, 2016, CenturyLink also filed a motion asking the trial court to certify the August 15, 2016 order for interlocutory appeal.  On September 26, 2016, the trial court issued a rule upon ServiceMaster to show cause as to why the trial court should not certify the order for interlocutory appeal.  ServiceMaster did not respond, and the trial court did not issue an order certifying the matter for appeal.  Even without such an order, however, this Court has jurisdiction because "[a]n order overruling preliminary objections seeking to compel arbitration is immediately appealable as an interlocutory appeal as of right pursuant to 42 Pa.C.S.[] § 7320(a) and [Pennsylvania Rule of Appellate Procedure] 311(a)(8)." *Petersen v. Kindred Healthcare, Inc.*, 155 A.3d 641, 644 n.1 (Pa.Super. 2017).

On appeal, CenturyLink asserts that the trial court abused its discretion in finding that the dispute was not subject to binding arbitration. CenturyLink argues that the true issue here is ServiceMaster's breach of contract, which falls within the scope of the arbitration clause. According to CenturyLink, ServiceMaster's allegation of CenturyLink's non-payment of invoices was nothing more than an effort to avoid arbitration after CenturyLink sent its notice of claim. CenturyLink argues that because "[a]ll claims made in [ServiceMaster's c]omplaint stem from ServiceMaster's breach of contract[,] any alleged non-payment is the direct result of ServiceMaster's breach[] of contract." CenturyLink's Br. at 9-10.

"Our review of an order overruling preliminary objections seeking to compel arbitration 'is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition.'" ***Saltzman v. Thomas Jefferson Univ. Hosps., Inc.***, __ A.3d __, 2017 WL 2823523, at *3 (Pa.Super. filed June 30, 2017) (quoting ***Callan v. Oxford Land Dev., Inc.***, 858 A.2d 1229, 1233 (Pa.Super. 2004)). In making this determination, we consider the following principles:

> (1) arbitration agreements are to be strictly construed and not extended by implication; and (2) when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute.

*Id.* (quoting **Callan**, 858 A.2d at 1233). "Whether a dispute is within the scope of an arbitration agreement is a question of law for which our scope of review is plenary." *Id.* (citation omitted).

Courts apply the following test to determine whether to compel arbitration:

> Where a party to a civil action seeks to compel arbitration of that action, a two-part test is employed to determine if arbitration is required. First, the trial court must determine if a valid agreement to arbitrate exists between the parties. Second, if the trial court determines that such an agreement does exist, it must then determine if the dispute involved is within the scope of the arbitration provision. The scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally.

***Pittsburgh Logistics Sys., Inc. v. Professional Transp. & Logistics, Inc.***, 803 A.2d 776, 779 (Pa.Super. 2002) (internal citations and quotation omitted).

Here, neither party disputes the validity of the arbitration clause. Therefore, we must determine whether the dispute between CenturyLink and ServiceMaster falls within the scope of that clause.

## I.  Scope of the Arbitration Clause

"A claim's substance, not its styling, controls whether the complaining party must proceed to arbitration or may file in the court of common pleas." **Callan**, 858 A.2d at 1233. With respect to contract interpretation, the "courts are responsible for deciding whether, as a matter of law, written contract terms are either clear or ambiguous; it is for the fact[]finder to

resolve ambiguities and find the parties' intent." ***Windows v. Erie Ins. Exch.***, 161 A.3d 953, 957 (Pa.Super. 2017) (quotation omitted).

> A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. The "reasonably" qualifier is important: there is no ambiguity if one of the two proffered meanings is unreasonable. Furthermore, reviewing courts will not distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity. Finally, while ambiguous writings are interpreted by the finder of fact, unambiguous ones are construed by the court as a matter of law.

***Id.*** (internal citations and emphasis omitted). "When an ambiguity in contractual language exists, 'parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances.'" ***Id.*** at 958 (quoting ***Miller v. Poole***, 45 A.3d 1143, 1146 (Pa.Super. 2012)). While

> [t]his Court may determine the existence of an ambiguity as a matter of law, [] the resolution of conflicting parol evidence relevant to what the parties intended by the ambiguous provision is for the trier of fact. Where the words used in a contract are ambiguous, the surrounding circumstances may be examined to ascertain the intent of the parties.

***Id.*** (quoting ***Walton v. Philadelphia Nat'l Bank***, 545 A.2d 1383, 1389 (Pa.Super. 1988)).

In its opinion, the trial court concluded that the term "except for non-payment of invoices for ServiceMaster's work" ("except clause") "clear[ly] state[d] that arbitration was expressly limited to disputes related to quality

of contracted services and excluded contract balance claims." In re: Opinion Pursuant to Pa.R.A.P. 1925(a), 11/14/16, at 3. The court therefore found that "the claims of the [c]omplaint are outside the arbitration clause" and overruled CenturyLink's preliminary objection. *Id.* The trial court's ruling is premised on an implicit conclusion that the except clause is unambiguous. We disagree.

The except clause is reasonably susceptible to two constructions. The first construction, which would render the arbitration clause narrow and favor ServiceMaster, would exclude from binding arbitration any issue that involves, either directly or indirectly, the non-payment of invoices. The second construction of the except clause, which would render the arbitration clause broad and favor CenturyLink, would require binding arbitration for all issues except those that involve only the non-payment of invoices. The parties have not offered, nor have we found, any case law that interprets the language contained in this particular clause.[7]

Based on the language of the except clause, and the lack of case law interpreting similar language, we conclude that the except clause is subject

_____

[7] We note that this Court recently decided a case involving an arbitration clause that required arbitration of "any dispute between [them], except those for nonpayment of fees," but we resolved that issue based upon a reading of the claims involved, rather than on a pure construction of the except clause. *See Fellerman v. PECO Energy Co.*, 159 A.3d 22, 30 (Pa.Super. 2017) (concluding that plaintiffs' tort claims arose "from duties they claim were owed them by [defendant] pursuant to the inspection agreement").

to more than one reasonable interpretation. Because the provision is ambiguous, the trial court erred in construing the clause as a matter of law. Accordingly, we remand[8] this case to the trial court for further proceedings. Those proceedings may include an evidentiary hearing to allow the parties to present parol evidence concerning the meaning of the except clause. Whether or not the parties avail themselves of that opportunity, the role of the trial court is to determine, as a matter of fact, the meaning of the clause. *See Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 483 (Pa. 2009) ("[A]mbiguous writings are interpreted by the finder of fact[.]").

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/5/2017

---

[8] CenturyLink and ServiceMaster both present a number of other arguments that we need not address in light of our disposition.