J-S15017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| RICHARD J. ORGITANO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MIRANDA N. LOWELL | : | No. 110 MDA 2023 |

Appeal from the Order Entered January 9, 2023
In the Court of Common Pleas of Lycoming County
Civil Division at No:  FC-2019-20473-CU

BEFORE:  BOWES, J., STABILE, J., and SULLIVAN, J.

MEMORANDUM BY STABILE, J.:                    **FILED: JULY 17, 2023**

Richard J. Orgitano ("Father") appeals from the January 9, 2023 order that granted the petition of Miranda N. Lowell ("Mother") (collectively, "Parents") to modify the existing custody order and awarded her primary physical custody of the parties' son, E.R.O., born in May 2019.  We affirm.

We glean the relevant factual and procedural history from the certified record.  Parents were never married but they lived together for approximately nine months prior to E.R.O.'s birth.  Thereafter, the parties separated and are no longer romantically involved.  At the time of these proceedings, Mother lived with her paramour, Carl Hunter, with whom she also has a child who was born in November 2022.  *See* N.T., 1/4/23, at 62.  Father is now married and currently lives with his wife, Lacey Orgitano, who was pregnant at the time of these proceedings with the couple's first child.  *Id*. at 89-90, 96.

Father and Mrs. Orgitano both work full-time outside the home during regular business hours. *Id*. at 91, 99. Accordingly, Father's mother, Sandy Orgitano ("Paternal Grandmother") and great grandmother care for E.R.O. between the hours of 6:30 a.m. and 4:30 p.m. at Paternal Grandmother's home. *Id*. at 80-81, 99-100. Mr. Hunter is also employed full-time. *Id*. at 62-63. Mother is not employed but serves as a stay-at-home caregiver to both E.R.O. and her second child. *Id*. at 14, 47.

The relationship between Parents has been fractious since the inception of custody litigation, which began when Father petitioned for shared legal and physical custody of E.R.O. in June 2019. *See* Complaint for Custody, 6/5/19, at 21-26. On September 10, 2019, the trial court awarded shared legal and physical custody of the child to Parents. *See* Order, 9/10/19, at ¶¶ 2-3. Parents share physical custody on a "2-2-3" basis, as follows:

> **Week One**:
> With Mother:  From 6:00 p.m. on Monday until 6:00 p.m. on Wednesday.
> With Father:  From 6:00 p.m. on Wednesday until 6:00 p.m. on Friday.
> With Mother:  From 6:00 p.m. on Friday until 6:00 p.m. on Monday.
>
> **Week Two**:
> With Father:  From 6:00 p.m. on Monday until 6:00 p.m. on Wednesday.
> With Mother:  From 6:00 p.m. on Wednesday until 6:00 p.m. on Friday.
> With Father:  From 6:00 p.m. on Friday until 6:00 p.m. on Monday.

*Id*. at ¶ 3. Initially, the parties conducted custody exchanges at a Dunkin Donuts in Newberry, Pennsylvania. *See* Order, 8/12/20, at ¶ 6.

However, Mother eventually sought a protection from abuse order ("PFA") against Father, which was entered by "agreement without an admission." N.T., 1/4/23, at 13-14. In connection with this and other related disputes, the trial court ordered that custody exchanges take place at the Lycoming County Custody Exchange Center in Williamsport ("the Exchange Center"). *See* Order, 1/28/21, at ¶ 6. Mother later petitioned to have the PFA and related restrictions on custody exchanges lifted on two separate occasions, but Father has consistently opposed these requests citing his belief that it provided beneficial boundaries during custody exchanges. *See* N.T., 1/4/23, at 143-44. Thus, at the time of these proceedings, the PFA and the related restrictions on custody exchanges remained in place.

Parents' respective living arrangements have also been a source of ongoing conflict in this matter. In September 2019, Father was living in Trout Run, Pennsylvania, while Mother was living in Williamsport, Pennsylvania, which are both located within Lycoming County. In October 2020, Father temporarily relocated to Morris, Tioga County, Pennsylvania, as "a result of a falling out with his parents." Order, 1/9/20, at 1. Although Mother objected, the trial court concluded that Father's temporary change in residence did not constitute contempt. *Id*. Along similar lines, Mother moved to Canton, Bradford County, Pennsylvania, in June 2021 due to the existence of "unsafe

living conditions" in her Williamsport residence. Notice of Proposed Relocation, 6/9/21, at 12. Father petitioned to force Mother to return to Lycoming County. Ultimately, however, the trial court found Mother's "move to a residence 45 minutes away" did not "significantly impair Father's custody rights," and, thus, she was not required to obtain consent from Father or seek court approval to change her residence.[1] Order, 7/6/21, at 1-2.

During the course of litigation, Mother advanced numerous claims of child abuse and neglect against Father, which were investigated by Lycoming County Children & Youth Services ("CYS") and found to be unsubstantiated. *See* N.T., 1/4/23, at 5-9. Father has raised concerns about Mother's mental health, which were also unfounded. *Id*. at 46. Parents have also both advanced competing claims that E.R.O. is being negatively coached by the other party. *Id*. at 33-34, 113. Nonetheless, the record reflects that E.R.O. is generally happy and well-adjusted in Parents' respective homes.

---

[1] Specifically, the trial court concluded that Mother's move did not constitute a "relocation" within the meaning of the Child Custody Act. *See* Order, 7/6/21, at 1-2. We note that a "relocation" is defined for these purposes as "[a] change in residence of the child **which significantly impairs the ability of a non-relocating party to exercise custodial rights.**" 23 Pa.C.S.A. § 5322(a) (emphasis added). Relocations that fit this definition are properly governed by the provisions of 23 Pa.C.S.A. § 5337, which require either unanimous consent of custodial parties or court approval. However, this Court has affirmed that changes in residence that do not significantly impair a non-moving party's custody rights do not qualify as relocations. *See D.K. v. S.P.K.*, 102 A.3d 467, 472 (Pa.Super. 2014) ("[A] relocation as contemplated in the statute requires a negative custodial impact on a nonrelocating party.").

On June 28, 2022, Mother filed the petition to modify custody that forms the basis for the instant appeal. Therein, Mother requested, *inter alia*, that the trial court award her primary physical custody of E.R.O. Father opposed the request and countered that he should be awarded primary physical custody. The trial court held a custody settlement conference on October 12, 2022, which failed to produce an agreement. Thereafter, a custody trial was held on January 4, 2023, wherein testimony was adduced from, *inter alia*, Father, Mother, Paternal Grandmother, Mrs. Orgitano, and Mr. Hunter. Additionally, CYS supervisor Holly Erb testified briefly concerning the agency's history of involvement with the family. At the conclusion of the proceeding and in an order filed January 9, 2023, the trial court awarded Mother primary physical custody of E.R.O., with Father permitted to exercise partial physical custody on the second, third, and fourth weekend of every month. **See** Order, 1/9/23, at ¶ 3. Father was also granted four consecutive weeks of summer vacation time with E.R.O., while Mother was awarded two weeks. **Id**. at ¶ 5.

On January 17, 2023, Father submitted both a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Thereafter, the trial court filed a responsive opinion pursuant to Rule 1925(a)(2)(ii), referring to the reasoning that it placed on the record at the conclusion of the custody trial. Father has asserted a single claim for relief in this Court: "Whether the court improperly weighed the custody factors in reaching its decision." Father's Brief at 4.

Our standard and scope of review in this context is well-established:

Our standard of review over a custody order is for a gross abuse of discretion. Such an abuse of discretion will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record.

In reviewing a custody order, we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Rogowski v. Kirven*, 291 A.3d 50, 60-61 (Pa. Super. 2023) (internal citations and quotations omitted).

As with all custody-related matters, this Court's "paramount concern is the best interest of the child involved." *Id*. at 61 (internal citation and quotation omitted). Indeed, Pennsylvania law provides that the trial court is only empowered to change an existing custody order if the modification will "serve the best interest of the child." 23 Pa.C.S.A. § 5338(a). To that end, the Child Custody Act sets forth sixteen factors at 23 Pa.C.S.A. § 5328(a) that a court must consider prior to modifying an existing custody order. *See E.B. v. D.B.*, 209 A.3d 451, 460 (Pa. Super. 2019). While a court's consideration of these factors is mandatory, "it is within the trial court's purview as the

finder of fact to determine which factors are most salient and critical in each particular case." *Id*. (internal citation omitted).

These factors provide as follows:

**(a) Factors.**--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a). In order to evidence its consideration of these required elements, trial courts must set forth a discussion of these best-interest factors "prior to the deadline by which a litigant must file a notice of appeal." *A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014).

Instantly, the trial court provided a timely and complete assessment of the Section 5328(a) factors at the conclusion of the custody hearing on January 4, 2023. *See* N.T., 1/4/23, at 157-66. Initially, the trial court found that the factors at Section 5328(a)(2), (2.1), (7), (14), and (15) were not relevant due to E.R.O. being too young to express a well-reasoned custody

preference and given the absence of indicia of child abuse, substance abuse, or underlying mental or physical conditions of the parties. *Id*. at 159-62.

The trial court concluded that the factors at Section 5328(a)(1), (4), (5), (6), (8), (9), (11), and (13) weighed equally between Parents. *Id*. Concomitantly, the court adjudged the factors at Section 5328(a)(3), (10), and (12) weighed in favor of Mother. *Id*. Finally, the trial court did not explicitly address any supplemental factors pursuant to Section 5328(a)(16).[2]

Initially, we note that Father's arguments with respect to the weighing of these factors are not well-framed in that he erroneously submits that the trial court "acknowledged that the custody factors favored neither party." Father's Brief at 11. This suggestion is plainly at odds with the trial court's on-the-record determinations above. *Cf.* N.T., 1/4/23, at 159-62. Setting aside this misapprehension, we discern Father is challenging the trial court's

---

[2]  While not framed pursuant to 23 Pa.C.S.A. § 5328(a)(16), the trial court was cognizant that its decision may impact the school district that E.R.O. would attend the following year for kindergarten. *See* N.T., 1/4/23, at 163. Ultimately, however, the trial court concluded that the parties had presented "not much evidence" regarding the choice of school districts and, consequently, it did not view choice of school district as a consideration. *Id*. ("I don't see that as a factor."). While "the court's choice of school **may** factor into the court's custody decision," this Court has cautioned that "over-emphasis" on "[c]ontinuity in an educational environment" may constitute an abuse of discretion. *S.S. v. K.F.*, 189 A.3d 1093, 1098 (Pa. Super. 2018) (emphasis added). We observe no abuse of discretion. Aside from sharing their preference for the school district associated with their respective homes, Parents offered no objective educational evidence.

determinations with respect to Section 5328(a)(11), (12), and (13).  *See*

Father's Brief at 11-12.  We will address each, in turn.

In pertinent part, Father asserts that 23 Pa.C.S.A. § 5328(a)(11), which

implicates the "proximity of the residences of the parties," should have been

weighed against Mother due to her move to Canton.  *See* Father's Brief at 11.

We acknowledge the trial court stated that it found Mother's move to Canton

to be "annoying" due to the court's personal knowledge regarding the quality

and length of the drive between Canton and Williamsport.  N.T., 1/4/23, at

161-62.  However, a different jurist issued the finding that Mother's move did

not constitute a "relocation" pursuant to 23 Pa.C.S.A. § 5322(a).[3]  *See* Order,

7/6/21, at 1-2.  That holding was never appealed.[4]  Consequently, the trial

court found no basis in the factual record upon which to conclude that Section

_____

[3]  At worst, the record reveals Mother was late to just two custody exchanges by approximately ten minutes following the move.  *See* Order, 7/6/21, at 1.

[4]  In his brief, Father argues that the "best interests of the child would have been met by . . . making [Mother relocate] back to Williamsport[.]"  Father's Brief at 13.  To the extent Father is attempting to re-litigate the earlier denial of his petition to force Mother to return to Lycoming County, we note that the law of the case doctrine provides that "a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter."  *Windows v. Erie Ins. Exch.*, 161 A.3d 953, 959 (Pa. Super. 2017).  Regardless, any arguable claim concerning the propriety of Mother's change of residence is waived due to Father's failure to preserve such a claim in either his concise statement of errors pursuant to Pa.R.A.P. 1925(b)(4)(vii) or in his brief's statement of questions presented pursuant to Pa.R.A.P. 2116(a).

5328(a)(11) weighed against Mother since it was already determined that Mother's change of residence had not significantly impacted custody.

We find no basis to overturn the factual determinations of the trial court pursuant to Section 5328(a)(11).[5] There are no indications in the facts of record that Mother's move to Canton negatively impacted E.R.O. or the parties' custody arrangements. Accordingly, the respective proximities of the parties' residences was properly weighed in equal favor of the parties since neither location offered any demonstrable benefit or detriment.

Turning to 23 Pa.C.S.A. § 5328(a)(12), this factor is focused upon "[e]ach party's availability to care for the child or ability to make appropriate child-care arrangements." The trial court found that this factor weighed in favor of Mother because she was a full-time, stay-at-home caregiver and, thus, had better availability to attend to E.R.O.'s everyday needs. *See* N.T., 1/4/23, at 162. Father objects that the court failed to consider that he was able to arrange appropriate familial childcare during his custody terms. *See* Father's Brief at 11 ("The factor allows for parents to arrange for child care. [Father] made arrangements for family to provide child care."). We disagree.

The trial court was undeniably cognizant of the fact that Father was able to provide childcare for E.R.O. while he was in Father's custody. *See* N.T., 1/4/23, at 165. However, the trial court principally predicated its weighing of

_____

[5] We note that the record indicates that Parents have both moved outside of Lycoming County at different points during the course of this litigation.

- 11 -

Section 5328(a)(12) upon its conclusion that E.R.O.'s best interests would be served in decreasing the number of times that the child would "bounce" between the supervision of different individuals. N.T., 1/4/23, at 163 ("I think the bouncing back [and] forth is bad for [E.R.O.]"). On this point, the trial court largely credited Father's testimony, which was as follows:

> The only thing that I would change, personally, would be the flip flopping so much. It's hard on him. He can't get adjusted. He's at one house and then a different house for a day and then right back. He can't get adjusted. When he was younger, I agree, it was great to bond with everybody, but now it's a burden. Now it's – it's not so much for me. I do not have a problem with the schedule, with travelling, with any of it. It's for his own well-being. He can't get adjusted. And I do believe that being one place or the other would benefit him greatly.

N.T., 1/4/23, at 100-01. Father's thoughts echo Mother's testimony on the same subject, wherein she noted E.R.O. was becoming increasingly more agitated and upset after the frequent custody exchanges. *Id*. at 34.

The childcare arrangements provided by Father required E.R.O. to be shuttled back and forth between Paternal Grandmother's house and Father's home every weekday to accommodate the work schedules of Father and Mrs. Orgitano. *Id*. at 91, 99-100. During these time periods, E.R.O.'s care was further subdivided between Paternal Grandmother and Father's great grandmother, creating additional custodial transitions. *Id*. at 81. In contrast, Mother is able and available to provide consistent, uninterrupted childcare to E.R.O., thereby addressing the very concerns raised by Father. *Id*. at 14, 47.

Based upon the foregoing, we find no abuse of discretion in the trial court's weighing of the factor at Section 5328(a)(12).

Finally, we turn to 23 Pa.C.S.A. § 5328(a)(13), which requires the trial court to consider "[t]he level of conflict between the parties and the willingness and ability of the parties to cooperate with one another." The trial court concluded that both parties had perpetrated an air of hostility. **See** N.T., 1/4/23, at 162 ("You know, short of a homicide I'm not sure there could be anymore conflict between the parties. I mean this is just dreadful."). While it found the level of conflict between Parents to be deplorable, the trial court ultimately found the parties' equally culpable. In pertinent part, Father asserts that Mother should be found at greater fault due to the unsubstantiated allegations of abuse she leveled against Father. **See** Father's Brief at 12 ("She made numerous false allegations of serios [sic] nature against [Father] in an attempt to gain primary custody of the child.").

Contrary to Father's arguments, the trial court's weighing of Section 5328(a)(13) is well-supported by the certified record. Parents have both levied unsubstantiated claims against each other, with Mother raising allegations of negligence and child abuse against Father while he challenged Mother's mental fitness. **See** N.T., 1/4/23, at 5-9, 46. Parents have also traded recriminations concerning "coaching" and allegations of emotional manipulation targeting E.R.O. **Id**. at 33-34, 113. Parents each sought to force the other to move involuntarily and, generally, have displayed regular

intransigence with respect to each other. Indeed, the conflict between the parties escalated to the point that a PFA was entered by mutual consent. Based on the foregoing, we find no abuse of discretion in the trial court's well-reasoned weighing of Section 5328(a)(13).

We observe no abuse of discretion in the findings of the trial court, which are reasonable and supported by the certified record. Furthermore, we find no error of law in its analysis. Thus, we affirm.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/17/2023