J-A09030-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| FRED L. AND ELLEN W. SHULTZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| YORK HOSPITAL, WELLSPAN | : | |
| MEDICAL GROUP, T/D/B/A | : | |
| WELLSPAN HOSPITALISTS | : | No. 984 MDA 2022 |

Appeal from the Judgment Entered August 17, 2022
In the Court of Common Pleas of York County Civil Division at No(s):
2016-SU-001288-82

BEFORE:  PANELLA, P.J., OLSON, J., and KUNSELMAN, J.

CONCURRING MEMORANDUM BY KUNSELMAN, J.: **FILED: APRIL 16, 2024**

As their first appellate issue, the Shultzes ask this Court a simple question: "Did the trial court err in failing to grant [their] motion for summary judgment, as a matter of law?"  Shultzes' Brief at 8.  However, I believe that question may eventually be deemed moot.  Thus, I would prefer not to issue a decision in this case until another appeal, pending before this Court *en banc*, is resolved.  Nonetheless, I agree with the majority that the Shultzes' first appellate issue affords them no relief.  Thus, regardless of the outcome of that separate *en banc* proceeding, I would affirm the judgment as the trial court entered it, because the first issue is either moot or meritless.

The majority addresses the Shultzes' first issue regarding the denial of summary judgment.  As explained below, there is a conflict in our precedents regarding whether a denial of summary judgment becomes moot after a case

proceeds to trial. On January 9, 2024, this Court granted *en banc* certification to decide that very issue in **Coryell v. Morris**, 1977 EDA 2021.

In **Coryell**, Robizza Inc. owned and operated a franchise of Domino's Pizza. One of Robizza's drivers, Steven Morris, was delivering pizza when he struck and injured Clarence Coryell. Mr. Coryell and his wife sued Mr. Morris, Robizza, and Domino's. They alleged Domino's was vicariously liable for Mr. Morris's negligence.

Both Domino's and the Coryells moved for summary judgement on the issue of vicarious liability. The parties agreed the franchise agreement was unambiguous and the trial court should determine vicarious liability, as a matter of law, because the issue involved contract interpretation. The trial court denied both motions for summary judgment; it ruled there was a genuine issue of material fact as to the extent of Domino's control over Morris. The matter proceeded to trial.

At the close of the Coryells' case-in-chief, Domino's moved for a nonsuit on vicarious liability. The trial court denied the motion, and the jury found Morris to be negligent and Domino's to be vicariously liable.

On appeal by Domino's, a panel majority considered whether it could address the denial of summary judgment after a trial, in light of the disparate treatment of the issue by this Court in several of our precedents, namely **Windows v. Erie Ins. Exch.**, 161 A.3d 953 (Pa. Super. 2017), **Yoder v. McCarthy Constr. Inc.**, 291 A.3d 1 (Pa. Super. 2023), and **Turnpaugh Chiropractic Health & Wellness Ctr., P.C. v. Erie Ins. Exch.**, 297 A.3d

- 2 -

404 (Pa. Super. 2023). Ultimately, the Majority believed it did not need to resolve the issue of mootness, because much of the caselaw had developed after Domino's filed its brief. The majority found the question of whether it should review the denial of summary judgment or the denial of JNOV was irrelevant, because, at either stage, the trial court should have decided Domino's vicariously liablity, as a matter of law.

Hence, the majority reached the issue and reversed the finding that Domino's was vicariously liable. The majority concluded that trial court erred by not granting summary judgment to Domino's, because the application of the unambiguous contract was a question of law for the trial court, not the jury.

Dissenting, Judge Bowes disagreed with the majority's decision to address the denial of summary judgment. Although the dissent agreed there is conflicting caselaw, Judge Bowes relied on more recent cases of **Whitaker v. Frankford Hospital of City of Philadelphia**, 984 A.2d 512 (Pa. Super. 2009), **Xtreme Caged Combat v. Zarro**, 247 A.3d 42 (Pa. Super. 2021), **Yoder**, and **Turnpaugh**, to make clear this Court's duty is to review the trial evidence to determine if Domino's was entitled to JNOV, not to review a pre-trial denial of summary judgment. If Domino's had wished review of the denial of summary judgment, she explained, it should have sought permission to appeal under 42 Pa.C.S.A. § 702(b).

Judge Bowes also disagreed with the finding that the trial court should have determined the claim of vicarious liability. She maintained that whether

- 3 -

Domino's and Morris were in a master-servant relationship presented a mixed question of fact and law for the jury.

We granted review *en banc*. The primary issue is "whether the denial of a summary-judgment motion can be addressed after the case has proceeded to trial . . . ." Application for Reargument *En Banc* at 2.

This case has a somewhat different procedural posture than **Coryell**, because, here, the trial court granted a nonsuit. However, that is a distinction without a difference. In both appeals, we are asked to address "the denial of a summary-judgment motion . . . after the case has proceeded to trial." **Id.** As such, the potential mootness problem in this appeal is identical to potential mootness problem in **Coryell**.

Under Internal Operating Procedure of the Superior Court 455.H, this Court is not to enter judgment on "an appeal when an identical issue is pending before an *en banc* panel, pursuant to I.O.P. 433.B.6." Additionally, the Supreme Court of Pennsylvania has said our "courts will **not** decide moot questions." **Public Defenders Off. of Venango County v. Venango County Court of Common Pleas**, 893 A.2d 1275, 1279 (Pa. 2006) (emphasis added). Thus, if the **Coryell** Court determines that orders denying summary judgment are moot after a case has proceeded to trial, this panel would commit legal error by deciding the merits of the Shultzes' first appellate issue. Thus, the safest procedure would be to await the **Coryell** Court's resolution of the mootness question before reaching the merits of this issue.

By reaching the merits of Shultzes' first issue, the majority impliedly holds that issues of summary judgment did not become moot upon commencement of trial. Thus, the majority has ruled, *sub silentio*, on the issue of mootness that is awaiting *en banc* decision in **Coryell**. Instead, we should withhold a decision on the first appellate issue (and, thus, this appeal) until the Court *en banc* has decided **Coryell**. Hence, I respectfully disagree with deciding the summary judgment issue.

Nonetheless, if it is proper for us to rule on the summary judgment issue post-trial, I agree with the majority's analysis. Thus, on issue one, the Shultzes would not be entitled to relief, regardless of the outcome of **Coryell**. For this reason, I concur in the result on issue one.

I join the majority's analysis on issues two, three, four and six.

On the Shultzes' fifth issue, I find that the trial court properly granted a nonsuit on the claim of corporate negligence. In resolving this issue, the majority sets forth the relevant testimony from Dr. Irfan Altafullah and Dr. Brian Larkin and opines that the Shultzes presented expert testimony in support of their corporate negligence claim against York Hospital. **See** Majority at 33-38. The majority then concludes that such evidence was insufficient to submit a cause of action of corporate negligence against York Hospital to the jury under **Thompson v. Nason Hospital**, 591 A.2d 703 (Pa. 1991). **See id.** at 40. It affirms the trial court's decision to grant York Hospital's motion for a nonsuit on this basis.

I disagree that the Shultzes presented any expert testimony to establish that the hospital breached its duty of care. When reviewing the testimony of Dr. Altafullah and Dr. Larkin, I note that neither witness was asked how the hospital breached its duty to Mr. Shultz, and neither gave any opinion specifically addressing the acts or omissions of the hospital.

Dr. Altafullah, is a neurologist, licensed to practice in Minnesota. *See* N.T. Trial, 6/13/22 – 6/17/22, at 180-181. He was offered as an expert witness in neurology, specializing in strokes. *Id.* at 197. After describing in great detail what he believed happened to Mr. Shultz, Dr. Altafullah was asked whether the "stroke care providers" fell below the standard of care. *Id.* at 247.

He responded, "that the doctors who saw [Mr. Shultz] were right on target . . ." but, "[f]or some reason, the plan was not executed appropriately." *Id.* at 247.

The doctor was then asked, "Did the physicians treating [Mr. Shultz] comply with the standard of care…?" *Id.* at 248.

He answered, "I would say they did not . . . And so, while it pains me to say it about colleagues, I think there were some omissions there that fell below the standard of care." *Id.* at 248. Although the doctor then indicated that certain tests should have been done before discharging Mr. Shultz, he never attributed fault to the hospital. *Id.* at 248-49.

Likewise, Dr. Larkin is a physician, also licensed to practice in Minnesota. *Id.* at 371. He was offered as an expert witness in "neuroradiology and in the

matters of venous and lymphatic systems to diagnose and recommend and perform treatment for persons who have symptoms of stroke." *Id.* at 379. He testified at length about the various scans and tests the doctors performed on Mr. Shultz. *Id.* 383-425. He was then asked whether, "the individual health care providers who were providing care to Fred Shultz acted in a manner that fell below the standard of care?" *Id.* at 425. He answered this question and provided a litany of actions and omissions which he believed fell below the standard of care. *Id.* at 425-31. However, Dr. Larkin was never asked nor opined about whether the hospital breached a duty of care.

Significantly, these doctors were not offered to testify to corporate negligence. Rather, they offered opinions about the care given by doctors. They were both asked if they knew the Shultzes' expert in corporate negligence, Dr. Kevin Brady, and both answered that they did not. *Id.* at 204, 382.

Here, the Shultzes attempted to use Dr. Kevin Brady as an expert to establish a claim of corporate negligence. Initially, the lawyers disputed whether Dr. Brady was offered to testify as an expert in corporate negligence, because that was not one of the areas for which the plaintiff offered him.[1] *See id.* at 623-26. Then, once Dr. Brady began his testimony, defense

---

[1] The Shultzes' counsel offered Dr. Brady as "an expert witness in the field of internal medicine, critical care medicine, emergency medicine, anesthesiology, and in cardiovascular anesthesia, and cardiac imaging." N.T. Trial, 6/13/22-6/17/22, at 622. Although counsel indicated he would go back and recertify Dr. Brady as an expert in corporate liability, as the trial court noted, he never did. T.C.O., 8/12/2022, at 15, n.3.

counsel raised multiple objections as to the formulation of his opinions, as it appeared the doctor was simply rephrasing findings from an article, Patient Safety Advisory, issued in 2010 by the Pennsylvania Safety Advisory. *Id.* at 639-57. As defense counsel argued, such testimony contravened the court's pretrial rulings about how Dr. Brady could use the "learned treatise" in his testimony. *Id.* at 657. The court sustained multiple objections. Ultimately, defense counsel requested a mistrial, or alternatively, that Dr. Brady's testimony be excluded from evidence. *Id.* at 657.

The trial court surmised that if it excluded Dr. Brady as a witness, then the Shultzes would move for a mistrial, "because this is a corporate negligence case, and Dr. Brady is their corporate negligence witness." *Id.* at 661. In response, the Shultzes' counsel observed that it was not only a corporate negligence case, but also a vicarious liability case. *Id.* at 661-62. Although counsel did not concede the case of corporate negligence, he did not move for a mistrial after the court granted defense counsel's motion to exclude Dr. Brady's testimony. *Id.* at 662. Instead, the Shultzes' counsel opted to continue with the trial.

Without Dr. Brady's testimony, however, the Shultzes did not offer any evidence of corporate negligence. The trial court granted the nonsuit on the corporate negligence claim, because the Shultzes did not produce expert testimony to support this claim. The court observed that it told the Shultzes they would need an expert to prove corporate negligence because the claim was not "obvious." T.C.O., 8/12/2022, at 15. The Shultzes "failed to produce

such an expert, and therefore there was no factual basis to send that claim to the jury." *Id.* I agree with the reasoning of the trial court.

In short, the majority decides the corporate negligence issue based on **Thompson**, **supra**; it concludes the Shultzes presented evidence of corporate negligence but that this evidence was insufficient to show a breach of duty under one of the four duties of a hospital articulated in **Thompson**. Unlike the majority, I would not reach the question of whether the Shultzes' evidence of corporate negligence was sufficient under **Thompson**, because there was no expert evidence of corporate negligence at all against the hospital.

As stated, while I do not believe it is procedurally proper to resolve this appeal now, I agree with the ultimate decision to affirm. I join majority in its merit analysis on issues one through four and issue six. On issue five, again, I conclude the judgment of the trial court should be affirmed, but on a basis different from the majority.

President Judge Panella joins this Concurring Memorandum.