J-A14030-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| AL-KAREEM Q. LOGAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KIMBERLY L. THOMPSON | : | No. 2078 EDA 2022 |

Appeal from the Order Entered July 20, 2022
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No:  D16108527

BEFORE:  LAZARUS, P.J., STABILE, J., and LANE, J.

MEMORANDUM BY STABILE, J.:                    **FILED DECEMBER 17, 2024**

In this divorce proceeding, Appellant, Al-Kareem Q. Logan ("Husband"), appeals from an order awarding Appellee, Kimberly L. Thompson ("Wife"), $229,203.50 for marital assets and debts and awarding Wife's attorney $50,000.00 in legal fees.  We affirm.

The record reflects that on September 19, 2015, after a period of living as husband and wife under the traditions of their Islamic faith, the parties were legally married in Philadelphia.  Both parties brought real estate into the marriage, and at the time of marriage they had formed businesses together: AOK Real estate, a property holding company, and Monte Cristo Real Estate, a property management company.

On February 13, 2016, the parties entered into a postnuptial agreement.[1] On the same date, they signed an addendum to this agreement concerning shared debt. The postnuptial agreement, drafted by Husband and his counsel, provided that all property not listed as separate property would be treated as shared, and that in the event of separation, each party would receive half of each property's net equity regardless of the proportion of his or her investment, unless otherwise agreed in writing. The addendum provided that, upon liquidation of the assets held by AOK Real Estate, Husband would pay all remaining personal debts incurred by the business, which were enumerated in Schedule A of the addendum.

On October 26, 2016, the parties separated, and Husband filed a complaint in divorce with a count for equitable distribution of property.

On January 31, 2018, the parties entered into a second postnuptial agreement, drafted by Husband's attorneys. On March 19, 2018, this agreement was entered as a court order by the Honorable Holly Ford. Paragraph D of this agreement reiterated that personal debt associated with the parties' real estate would be paid in accordance with the February 2016 postnuptial agreement.

Pursuant to this agreement, in 2018, all AOK Real Estate properties were

---

[1] Somewhat confusingly, this agreement was titled as a "prenuptial" agreement. Since the parties entered into this agreement after getting married, we will refer to it as their first postnuptial agreement.

- 2 -

sold, and proceeds totaling $259,519.98 were placed in separate Section 1031 exchange accounts for each party. Husband's 1031 account contained $131,270.67, and Wife's account contained $128,249.31. Pursuant to the terms of the 2018 postnuptial agreement, neither party was permitted to withdraw their 1031 account funds without the agreement of both parties or by court order. Despite this agreement, Husband withdrew the funds from his 1031 account without an agreement or court order. Husband did not inform Wife or either party's attorney of the withdrawal.

During a hearing on November 30, 2018, a divorce hearing officer bifurcated the parties' divorce proceedings. The hearing officer granted a divorce decree but did not decide issues regarding property distribution, economic relief, or the parties' postnuptial agreements, holding that all issues relating to the agreements would be addressed in motion court proceedings before a judge. On December 19, 2018, the divorce decree was entered.

On September 27, 2018, Wife filed a contempt petition. On January 7, 2019, the Honorable Diane Thompson found Husband in contempt for willfully and knowingly violating the 1031 account agreement by withdrawing funds without an agreement or court order. Judge Thompson ordered Husband to provide an accounting of any missing funds after depositing the funds remaining from his withdrawal into an escrow account with each party's counsel acting as agent. Husband did not appeal Judge Thompson's order.

On February 21, 2019, Wife filed a second petition for contempt. On May 23, 2019, a hearing on the second contempt petition took place before

the Honorable Ourania Papademetriou. At the time of that hearing, Husband had neither opened an escrow account nor deposited any funds. While Husband provided an accounting of the money withdrawn that was in violation of the March 19, 2018 order, he did not comply with any other provisions of Judge Thompson's January 7, 2019 order. Judge Papademetriou found Husband in contempt of the January 7, 2019 order. On May 29, 2019, Judge Papademetriou ordered Husband to deposit all money he received from the 1031 exchange account into an escrow account, with both parties' attorneys acting as agents. Nevertheless, Husband did not create an escrow account or deposit funds into any such account. Wife did not withdraw her 1031 exchange account funds until permitted to do so by an order dated January 28, 2021.

On July 3, 2019, the Honorable Doris Pechkurow held that the two postnuptial agreements addressed the disposition of all marital assets and economic interests, and that a judge would resolve the parties' disputes concerning these agreements and related matters in a *de novo* trial.

On December 18, 2019, a *de novo* trial began before the Honorable Christopher Mallios. Also, before Judge Mallios was Wife's third contempt petition filed on November 22, 2019 and cross-petitions for special relief filed by the parties. The ensuing hearings were lengthy and highly adversarial. While Husband was testifying, two of his attorneys in two separate hearings requested permission to withdraw their appearances. Husband gave inconsistent testimony during these hearings. For example, Husband provided

hundreds of pages of documents including illegible receipts and duplicative documents in anticipation of the initial hearing on December 18, 2019. During cross-examination about these documents on September 10, 2020, however, Husband testified, "Oh, no, none of that is admissible, Your Honor. That book in particular, you can throw away." N.T. 9/10/20, at 26-27.

On July 20, 2022, Judge Mallios entered an order resolving all economic claims between the parties, the parties' petitions for special relief and Wife's third contempt petition. Judge Mallios ordered Husband to pay Wife $229,203.50 for marital assets and debts. Judge Mallios reached this amount by finding that Husband owed Wife $233,236.10 less $4,032.60 that Wife owed Husband. Judge Mallios also ordered Husband to pay Wife's attorney $50,000.00 in counsel fees. Husband timely appealed to this Court.[2] One day after filing his appeal, Husband filed a Pa.R.A.P. 1925 statement of matters complained of on appeal ("Rule 1925 statement"). On November 14, 2022, the trial court filed a Pa.R.A.P. 1925 opinion. In early 2023, Husband filed for bankruptcy. In November 2023, the bankruptcy stay was lifted, thus allowing this appeal to proceed.

Husband raises the following issues in this appeal:

1. Whether the trial court overrode or misapplied the law by arriving at determinations as to monetary amounts [Husband] was ordered to pay [Wife], as reflected in the trial court order,

---

[2] Husband properly refrained from filing post-trial motions, because the Rules of Civil Procedure prohibit post-trial motions relating to claims involving marital property or enforcement of marital agreements. Pa.R.Civ.P. 1920.52(a).

which amounts derived from certain credit accounts, monies or (personal) property not specified in the parties' postnuptial Agreements.

2. Whether the trial court ignored or failed to apply the relevant law or abused its judicial discretion by mandating [Husband] to pay [Wife's] counsel fees and costs reflecting partiality, prejudice, bias, or ill will.

3. Whether the trial court overrode the relevant law or abused its discretion by granting [Husband's] counsel's petition to withdraw as counsel, while [Husband] was on cross examination and within twenty (20) days of the next hearing date.

4. As a subsidiary issue pursuant to Pa.R.A.P. 1925(b)(4)(v), [Husband] offers the following: whether the trial judge abused his discretion by engaging in settlement discussions with counsel only, absent [Husband]'s knowledge or input, after [Husband] had testified on direct testimony, and at that precise point in the proceedings, was on cross examination.

Husband's Brief at 20-21.

We review awards of equitable distribution for abuse of discretion:

A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

- 6 -

*Childress v. Bogosian*, 12 A.3d 448, 455 (Pa. Super. 2011) (citations omitted). The court will not engage in a factor by factor review of the trial's rulings but instead looks at the distribution scheme as a whole. *Lee v. Lee*, 978 A.2d 380, 383 (Pa. Super. 2009). Moreover, it is within the province of the trial court to weigh the evidence and decide credibility, and we will not reverse these determinations so long as they are supported by the evidence. *Childress*, 12 A.3d at 455.

Judge Mallios asserted in his opinion that Husband waived all of his claims on appeal because his Rule 1925 statement was vague and overly lengthy. Opinion, 11/14/22, at 13-14. We held in *Kanter v. Epstein*, 866 A.2d 394 (Pa. Super. 2004), that an appellant fails to preserve his issues for appeal when he raises an "outrageous" number of issues in his Rule 1925 statement. *Id.* at 401 (two appellants failed to preserve any claims for appeal when they raised 55 and 49 issues, respectively, in their Rule 1925 statements). In contrast, Husband's Rule 1925 statement has far fewer issues (11), and they are neither too vague nor too lengthy to hamper appellate review. Accordingly, we decline to find waiver on the basis asserted by Judge Mallios. We do, however, find that Husband waived multiple arguments for other reasons discussed below.

In his first argument, Husband asserts that Judge Mallios erred by awarding Wife monies in paragraphs 3, 4, 5, 6, 7, 10, 11, 12, 13 and 14 of the July 20, 2022 order, because the postnuptial agreements did not authorize these awards. Husband's Brief at 28, 31-34. Wife responds that Husband has

waived these objections due to his failure to allege in his Rule 1925 statement that the postnuptial agreements did not authorize these awards. We conclude that Husband has waived all objections except his objection to paragraph 10. We further conclude that Husband's objection to paragraph 10 (which directs Husband to pay Wife $88,829.39 to reimburse her for debts) lacks merit.

Judge Mallios awarded Wife the following in the relevant paragraphs of his order:

```
Paragraph 3 —   $8,072.94 (AOK real estate Univest account)
Paragraph 4 —   $12,625.41 (AOK real estate PFCU account)
Paragraph 5 —   $20,950.00 (personal property retained by Husband)
Paragraph 6 —   $35,704.00 (rental income)
Paragraph 7 —   $18,200.28 (retained security deposits)
Paragraph 10 — $88,829.39 (loan and credit card payments)
Paragraph 11 — $25,176.50 payments for life insurance policy)
Paragraph 12 — $9,022.40 (medical bills)
Paragraph 13 — $2,000.00 (move out contract)
Paragraph 14 — $450.00 (Santander overdraft fees)
```

Order, 7/20/22.

Paragraph 2 of Husband's Rule 1925 statement objects to paragraph 3 of the July 20, 2022 order as follows:

The Court erred by ordering [Husband] to pay [Wife] $8,072.94. The Monte Cristo Bank Account did not have a balance of $16,056.97 on the date of separation of October 26, 2016. AOK Real Estate had no money.

Rule 1925 Statement at ¶ 2. This is a claim that Judge Mallios miscalculated the balance in the parties' bank account. In his appellate brief, however, Husband argues that the postnuptial agreements did not authorize an award of monies in the bank account, Husband's Brief at 30-34, a different issue than

the issue in the Rule 1925 statement. Since Husband did not raise this issue in his Rule 1925 statement, it is waived. *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) (any issue not raised in Rule 1925 statement will be deemed waived for appellate review).

Paragraph 3 of Husband's Rule 1925 statement objects to paragraph 4 of the order as follows:

> The Court erred by ordering [Husband] to pay [Wife] $12,625.41.
> The $20,821.14 came from a loan [Husband] took.

*Id.* at ¶ 3. Wife contends that Husband waived this claim because the argument in his brief (the postnuptial agreements did not authorize an award of these monies) differs from the objection in his Rule 1925 statement. Judge Mallios found waiver for a different reason:

> Husband does not specify what $20,821.14 is referenced, points to no evidence in the record that would support his claim that those funds were from a loan, and fails to elucidate why the fact that the funds may have been from a loan means that this Court erred in its decision . . . This statement of error therefore is vague to the point of leaving the court guessing as to what error of law or fact is alleged, therefore fails to meet the requirements of Pa.R.A.P. 1925(b), and should provide no basis for relief.

Opinion, 11/14/22, at 18-19. We agree with Judge Mallios that Husband's objection to the award of $20,821.14 is waived due to the vagueness of his objection in his Rule 1925 statement. *See Commonwealth v. Lemon*, 804 A.2d 34, 37 (Pa. Super. 2002) ("when the trial court has to guess what issues an appellant is appealing, that is not enough for meaningful review . . . [A]

- 9 -

Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all").

Paragraph 4 of Husband's Rule 1925 statement objects to paragraph 5 of the order as follows:

> The Court erred by ordering [Husband] to pay [Wife] $20,950.00. The parties did not have $41,900.00 value of personal property. Wife had no jewelry with a fair market value above $1,000.00. Wife had no proof. Husband produced receipts for jewelry totaling $3,000.00. There is no basis to support a value of $10,000.00 worth of tools.

*Id.* at ¶ 4. This is a claim that Judge Mallios made an improper valuation of the parties' personal property. In his appellate brief, however, Husband argues that the postnuptial agreements did not authorize an award of monies relating to personal property, Husband's Brief at 30-34, a different issue than the issue in the Rule 1925 statement. Since Husband did not raise this issue in his Rule 1925 statement, it is waived. *Lord, supra*.

Paragraph 5 of Husband's Rule 1925 statement objects to paragraph 6 of the order as follows:

> The Court erred by ordering [Husband] to pay [Wife] $35,704.00 for rental income. When the mortgages, rental repairs utility bills, property insurance) and renovation cost were subtracted from rental income there was a net loss. AOK Real Estate lost money as shown on all tax returns. The Court took all income from 2017 tax return for AOK Real Estate and did not consider expenses. The months in 2016 that are subsequent to the date of separation and the total estimate that the Court stated was incorrect.

*Id.* at ¶ 5. This is a claim that Judge Mallios erroneously determined that the parties' business earned rental income. In his appellate brief, however,

Husband argues that the postnuptial agreements did not authorize an award of monies relating to rental income, Husband's Brief at 30-34, a different issue than the issue in the Rule 1925 statement. Since Husband did not raise this issue in his Rule 1925 statement, it is waived. *Lord, supra*.

Paragraph 6 of Husband's Rule 1925 statement objects to paragraph 7 of the order as follows:

> The Court erred by ordering [Husband] to pay [Wife] $18,200.28 for what it stated was retained security deposits. [Husband] renovated all five properties. Both parties were behind in paying taxes as of the date of separation. In fact, the Nassau Road property was going up for Sheriffs Sale as of the date of separation. The Court erred by absolving [Wife] of all financial responsibility for delinquent taxes, refuse fees and past due water bills. The Court rewarded [Wife] for walking away from the properties and refusing to sell for two years causing all taxes utilities to increase.

*Id.* at ¶ 6. This is a claim that Judge Mallios erroneously awarded Wife security deposits even though she failed to pay taxes and other bills and refused to sell the properties. In his appellate brief, however, Husband argues that the postnuptial agreements did not authorize an award of monies relating to security deposits, Husband's Brief at 30-34, a different issue than the issue in the Rule 1925 statement. Since Husband did not raise this issue in his Rule 1925 statement, it is waived. *Lord, supra*.

Husband contends that Judge Mallios erred in paragraph 11 of his order by ruling that Husband must pay Wife $25,176.50 for payments Wife allegedly made toward a life insurance policy. Wife responds that Husband waived this issue by failing to raise this issue in his Rule 1925 statement. Wife's Brief at

14. Our review of the Rule 1925 statement reveals that Wife is correct. Therefore, this issue is waived. *Lord, supra*.

Paragraph 8 of Husband's Rule 1925 statement objects to paragraph 12 of the order as follows:

> The Court erred by ordering [Husband] to pay [Wife] $9,022.40 for medical bills. [Husband] provided documentation from his employer, the Philadelphia Gas Works, that stated it could not determine the reason [Wife] was removed from coverage as of October 1, 2016. There was no evidence that [Husband] removed [Wife] from coverage. It is standard procedure to notify an insured of a lapse in coverage.

*Id.* at ¶ 8. This is a claim that the court erred by awarding Wife monies for medical bills because there was no evidence Wife was removed from medical insurance coverage. In his appellate brief, however, Husband argues that the postnuptial agreements did not authorize an award of monies relating to medical bills, Husband's Brief at 30-34, a different issue than the issue in the Rule 1925 statement. Since Husband did not raise this issue in his Rule 1925 statement, it is waived. *Lord, supra*.

Paragraph 9 of the Rule 1925 statement objects to paragraph 13 of the order as follows:

> The Court erred by ordering [Husband] to pay [Wife] $2,000.00. Appellant never signed a move-out contract. [Wife] produced a fictitious document that was never signed by [Husband]. [Wife] never produced a verification page for what she claimed [Husband] docu-signed.

*Id.* at ¶ 9. This is a claim that the parties did not have a move-out contract.

In his appellate brief, however, Husband argues that the postnuptial agreements did not authorize an award of monies relating to move-out payments, Husband's Brief at 30-34, a different issue than the issue in the Rule 1925 statement. Since Husband did not raise this issue in his Rule 1925 statement, it is waived. *Lord, supra*.

Paragraph 10 of the Rule 1925 statement objects to paragraph 14 of the order as follows:

> The Court erred by ordering [Husband] to pay [Wife] $947.60. There was never a $947.60 overdraft fee. [Wife] had an auto deduction on her checking account. [Wife] should have been responsible for the entire amount.

*Id.* at ¶ 10. This is a claim that the court erred in directing Husband to pay Wife an overdraft fee because there was no such overdraft fee. In his appellate brief, however, Husband argues that the postnuptial agreements did not authorize an award of monies relating to an overdraft fee, Husband's Brief at 30-34, a different issue than the issue in the Rule 1925 statement. Since Husband did not raise this issue in his Rule 1925 statement, it is waived. *Lord, supra*.

For these reasons, Husband waived his objections to paragraphs 3, 4, 5, 6, 7, 11, 12, 13 and 14 because his Rule 1925 statement raised different objections to these paragraphs than the objection in his brief. *Lord*, *supra*. Even if Husband had preserved these arguments for appeal, we still would have found them meritless in view of the comprehensive analysis in Judge Mallios's opinion. *See* Opinion at 17-31, 34-39 (objection to paragraph 3

meritless because evidence showed that parties' bank accounts had over $16,000.00, half of which belonged to Wife; objection to paragraph 4 meritless because there was no evidence that these monies came from Husband's loan; objection to paragraph 5 meritless because evidence showed that value of parties' personal property was $41,900.00, half of which belonged to Wife; objection to paragraph 6 meritless because parties had rental income of $71,408.00, half of which belonged to Wife; objection to paragraph 7 meritless because Husband retained security deposits, excluded Wife from rental business, and failed himself to pay taxes on the properties; objection to paragraph 12 meritless because evidence showed that Husband removed Wife from his employer's medical insurance coverage without informing Wife; objection to paragraph 13 meritless because evidence showed that parties had a move-out contract; objection to paragraph 14 meritless because Husband, not Wife, incurred overdraft fee).[3]

Next, we hold that Husband preserved his objection to paragraph 10 of Judge Mallios's order. His Rule 1925 statement provides in relevant part:

> The Court erred by ordering [Husband] to pay [Wife] $88,829.39 to reimburse her for debts. The Prenuptial Agreement states that Appellant is to reimburse Appellee for business debts. The Court simply added up payments [Wife] made in her bank statements without any reference to whether they applied to the terms of the Prenuptial Agreement as to debt owed for business use. [Wife] provided no documentation to confirm the amount owed as of the

---

[3] As discussed above, Judge Mallios did not address paragraph 11 of his order, an award of payments Wife made toward a life insurance policy, because Husband did not raise an objection to this award in his Rule 1925 statement.

date of separation. [Wife] only provided information as to the total amount she paid. It cannot be determined whether or not [Wife] was making purchases post separation.

Rule 1925 Statement at ¶ 7. Because the "prenuptial agreement" actually was the parties' first postnuptial agreement, *see* n.1, *supra*, we conclude that this objection is congruent with the argument on pages 30-34 of Husband's brief that Judge Mallios misconstrued or misapplied the postnuptial agreements with respect to business debts.

We further conclude, however, that this argument lacks merit. Judge Mallios analyzed this issue as follows:

> Husband argues this Court erred in ordering Husband to pay Wife $88,829.39 to reimburse her for loan and credit card payments she made after the date of separation. Husband's argument relies on the parties' 2016 postnuptial agreement which states that Husband is required to reimburse Wife for business expenses, but that this Court instead "simply added up payments" and did not distinguish between business and personal debt. Husband claims there was insufficient documentation to establish what was owed at the time of separation and that "it cannot be determined whether or not Wife was making purchases post separation."
>
> The irony is not lost on this Court that Husband alleges error based on this Court somehow improperly conflating business and personal expenses, when after days of cross-examination and shifting false testimony it came to light that Husband had done the same and asked this Court not to examine any of that evidence. However, this Court was well within its discretion in ordering Husband to reimburse Wife for debts she paid but that Husband was responsible for under the parties' 2016 and 2018 postnuptial agreements.
>
> Husband concedes in his allegation of errors that under the 2016 postnuptial agreement, he must reimburse Wife for shared debts.

(Husband's [Rule 1925] Statement, at [¶ 7][4]; Ex. P-1). Nothing in the 2018 postnuptial [agreement] alters that responsibility, instead reiterating that personal debt associated with the properties must be paid in accordance with the 2016 agreement. (Ex. P-2, at ¶ D). Schedule A of the 2016 agreement lists as shared debt many different credit cards and loans. (Ex. P-1, Schedule A).

Evidence and testimony at trial showed that Wife paid all debts listed in Schedule A at great personal expense and that ultimately, she paid the remaining shared debts only when she was able to liquidate her 1031 Exchange Account by an order of this Court. (N.T. 06/23/21, at 56, 62-71; Ex. 27, 31, 30, 32, 33, 34, 35, 36, 37). These expenses included $5,891.78 for a loan from Philadelphia Federal Credit Union. (Ex. 27). She paid $10,562.40 in payments to a credit card through Bank of America. (Ex. 31).

Wife paid $20,905.63 in payments for a loan through American Heritage Credit Union. (Ex. 30). Payments towards a Home Depot credit card totaled $14,622.76 (Ex. 32). A Lowe's credit card totaled $2,481.35 (Ex. 33). A Chase Bank credit card totaled $8,902.59. (Ex. 34). A Susquehanna Bank credit card totaled $11,564.91. (Ex. 35). A Discover credit card totaled $8,920.01. (Ex. 36). Lastly, a Barclay's credit card totaled $4,977.96. (Ex. 37).

Husband acknowledges that Wife did provide this information regarding the total amounts she paid for the business. (Husband's Statement, at 3). This Court found Wife's testimony and documentation in this regard to be credible, and pursuant to the parties' 2016 agreement, this Court properly ordered Husband to reimburse Wife for the entire amount, $88,829.39. No relief is due.

Opinion at 32-34. We accept this analysis, since it fell within Judge Mallios's

province to weigh the evidence and assess credibility, and since his rulings on

---

[4] To repeat, paragraph 7 of the Rule 1925 statement is the only paragraph in which Husband referenced a postnuptial agreement.

these subjects found ample support in the evidence. *Childress*, 12 A.3d at 455.

In the second argument in his brief, Husband objects to Judge Mallios's decision to order Husband to pay $50,000.00 in attorney fees directly to Wife's counsel. Husband has waived this argument to the extent that his appellate brief raises issues that he failed to raise in his Rule 1925 statement. To the extent that Husband preserved this issue for appeal, it is devoid of merit.

Section 3702 of the Divorce Code provides that the court "may allow a spouse . . . reasonable counsel fees and expenses." 23 Pa.C.S.A. § 3702. We review awards of such fees for abuse of discretion. *Cook v. Cook*, 186 A.3d 1015, 1028 (Pa. Super. 2018). "Counsel fees are awarded in a divorce proceeding based on the facts of each case after a review of all the relevant factors; these factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution." *Id.*

The objection to counsel fees in Husband's Rule 1925 statement lacks a paragraph number and begins in mid-sentence:

> [Wife] $50,000.00 for the attorney fees of [Wife]. The fees allegedly incurred were excessive. Furthermore, the Postnuptial Agreement limited attorney fees to $3,600.00. The Court erred by finding that [Husband] showed a complete lack of candor and credibility. The Court further erred in finding that [Husband] caused most of the legal fees of [Wife]. The jointly owned five properties' values were supposed to be sold in 2016. The lack of action by [Wife] caused the marital assets to be eroded for a two year period leading up to the sale.

The Court compounded the error by stating that two attorneys sought to withdraw citing unspecified ethical reasons. The Court never received evidence as to any factual basis for a so-called ethical reason.[5]

Rule 1925 statement at p. 5. In his appellate brief, Appellant argues that Judge Mallios failed to consider his ability to pay, Wife's financial resources, the value of services rendered by Wife's counsel, and the property that Wife received in equitable distribution. Husband's Brief at 37 (citing **Cook**, **supra**). Husband, however, failed to raise these factors in his Rule 1925 statement and therefore has waived his right to object to these factors in this appeal. **Lord**, **supra**.

With regard to the issue that Husband actually raised in his Rule 1925 statement, Judge Mallios provided the following analysis:

> [T]he Superior Court has held that in determining the propriety of an award of attorney's fees in a divorce proceeding, the purpose of such an award is to promote fair administration of justice. **Cook**, [186 A.3d] at 1028; 23 Pa.C.S.[A.] § 3702.
>
> In the unlabeled section before allegation 15, Husband claims that "the Postnuptial Agreement limited attorney fees to $3,600." (Husband's Statement, at 5). Assuming *arguendo* Husband refers to the parties' January 2018 postnuptial, Section 2.2(c) of that agreement states, "Husband agrees to pay half of Wife's total attorney's fee for representation by Wendy Glazer, Esq., not to exceed $3,600.00. Plaintiff's one-time payment referred to here does not represent or serve as his acceptance or

_____

[5] We do not see any logical connection between Husband's objection to counsel fees and his objection that Judge Mallios "compounded [his] error" by stating that two attorneys sought to withdraw. Judge Mallios apparently did not see any connection either, since he did not address the withdrawal of counsel in his opinion. Since this matter was irrelevant to the issue of counsel fees, we do not find that Judge Mallios erred by failing to address it.

acknowledgement to pay any of Wife's future attorney's fees whether incurred in this or any other matter." (Ex. P-2, at 6). By its plain language, it is clear that Section 2.2 does not represent an agreement as to future attorney's fees incurred by Wife, but that Husband's one-time payment of $3,600 was made to cover half of Wife's attorney's fees up until the time of signing. What's more, the agreement contains no waiver of a claim for attorney's fees, which Husband acknowledged at trial. (N.T. 09/10/20, at 137).

After the 2018 postnuptial was signed, divorce litigation proceeded for an additional four years, Wife's attorney would have to file three petitions for contempt which were granted due to Husband's noncompliance with both the agreement and court orders, and generally, Appellant's lack of candor and truthfulness in these proceedings resulted in Wife incurring a high level of attorney's fees. As an illustrative example, Appellant sent a weblink of exhibits to Wife's attorney late at night on February 9, 2021 for a hearing the next day. (N.T. 04/29/21, at 213-215). This last-minute discovery, consisting of thousands of pages and containing many duplicate documents that had already been provided, necessitated hundreds of dollars in printing costs and many hours of the attorney's time as she had to go through and discern what was new about the exhibits and which documents had already been provided. *Id*.

This Court reviewed Wife's attorney's billing statements and found them to be credible. (Ex. W-28). As of April 1, 2021 Wife owed $58,245.57 in counsel fees and costs, and had already made payments totaling $18,300.00 in 2021. In light of multiple years that this litigation necessitated, the copying and printing costs, filing fees, transcript costs incurred, and the finding that Appellant was in contempt for a third time, this Court's award of $50,000 to Wife's attorney was not excessive. Such an amount promotes the fair administration of justice, and this Court's award should be affirmed.

Opinion, 11/14/22, at 40-42. We find this analysis, and the award of attorney

fees, a proper exercise of discretion.

In his third argument, Husband contends that Judge Mallios abused his

discretion by allowing his attorney to withdraw while he was on cross-

- 19 -

examination and within twenty days of the next hearing date. Husband has waived this issue. As discussed above, Husband claimed in his Rule 1925 statement that counsel "sought to withdraw" in the course of objecting to Judge Mallios's award of counsel fees. The Rule 1925 statement, however, failed to include the issue that Husband now raises, namely that (1) Judge Mallios actually allowed his attorney to withdraw, and (2) counsel withdrew while Husband was on cross-examination and within twenty days of the next hearing date. Because Husband once again attempts to raise an issue that he failed to include in his Rule 1925 statement, it is waived. **Lord**, **supra**. Even if Husband preserved this issue for appeal, he fails to demonstrate how he suffered prejudice from counsel's withdrawal, since he obtained new counsel before the next hearing.

In his final argument, Husband contends that Judge Mallios erred by engaging in settlement discussions with the parties and without Husband's knowledge. Husband has waived this argument by failing to include it in his Rule 1925 statement. **Lord**, **supra**.

For these reasons, we affirm the July 22, 2022 order. We attach Judge Mallios's November 14, 2022 opinion to this decision and direct that it be attached to any further filings in this case.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/17/2024

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT – FAMILY COURT DIVISION

AL-KAREEM Q. LOGAN,       :    Superior Court Docket No.
    Appellant            :    2078 EDA 2022

        V.              :

                    :    Trial Court Docket No.

KIMBERLY L. THOMPSON,    :    D16108527
    Appellee           :

FILED

Mallios, J.

NOV 1 4 2022

CLERK OF FAMILY COURT

**OPINION**

## I.   **INTRODUCTION**

Al-Kareem Logan (Husband), appeals the order entered by this Court on July 20, 2022 resolving all economic claims following the parties divorce, the Petition for Special Relief filed by Husband May 22, 2019, and the Petition for Contempt and Special Relief filed by Kimberly Thompson (Wife) on November 22, 2019. No relief is due.

## II.   **FACTS AND PROCEDURAL HISTORY**

After a period of living as husband and wife under the traditions of their Islamic faith, the parties were legally married in Philadelphia on September 19, 2015. (N.T. 12/18/19, at 26). Both parties brought real estate into the marriage, and at the time of marriage they had formed



businesses together -- AOK Real estate, a property holding company, and Monte Cristo Real Estate, a property management company. (N.T. 04/25/21, at 238). The parties entered into a post-nuptial agreement on February 13th, 2016. (N.T. 12/18/19, p. 242; Ex. P-1). They signed an addendum to that agreement regarding shared debt the same day. (N.T. 04/29/21, at 242; Ex. P-1).

The February 13, 2016 postnuptial agreement, drafted by Husband and his counsel, provided that all property not listed as separate property would be treated as shared, and that in the event of separation, each party would be entitled to half of the net equity of the property regardless of the proportion of each parties' investment, unless otherwise agreed in writing. (N.T. 6/23/21, at 17; Ex. P-1). The addendum provided that, upon liquidation of the assets held by AOK Real Estate, Husband would pay all remaining personal debts incurred by the business, which were enumerated in Schedule A of the addendum. (Ex. P-1).

The parties were separated on October 26, 2016 when Husband filed a Complaint in Divorce with a count for equitable distribution of property. (N.T. 12/18/19, at 26).

On January 23, 2017 Husband filed a Protection from Abuse (PFA) Petition against Wife. Wife filed a cross-PFA complaint on March 30, 2017.

2

Both PFA petitions were denied after a hearing before this Court on June 1, 2017. At the initial divorce proceeding before this Court on December 18, 2019 both parties agreed that there was no basis for this Court to recuse itself due to this Court presiding over their PFA cases. (N.T. 12/18/19, at 10). Neither party objected to this Court's hearing the parties *de novo* divorce trial and Wife's petition for Contempt. *Id.*

Husband filed a motion for special relief on May 10, 2017. Wife filed an answer to this motion, as well as an answer and counterclaim to the complaint in divorce with counts for equitable distribution, counsel fees, costs, and expenses on October 26, 2017. Husband's motion for special relief was denied after a hearing before the Honorable Michael Fanning on November 6, 2017. Judge Fanning entered an order compelling Husband to give Wife an accounting of all receipts regarding the business and be provided access to all matters regarding the business, including, but not limited to, all software and operating systems, usernames and passwords, bank accounts, keys, and tenant information. Wife did not receive an accounting of all receipts or access to the properties, software, or business accounts. (N.T. 06/23/21, at 24).

The parties entered into a second post-nuptial agreement, drafted by Husband's attorneys, on January 31, 2018. (N.T. 7/3/19, at 8; N.T. 9/10/20,

3

at 140; Ex. P-2). This agreement was entered as a court order by the Honorable Holly Ford on March 19, 2018. (N.T. 12/18/19, at 82). Paragraph D of this agreement reiterated that personal debt associated with the parties' real estate shall be paid in accordance with the February 2016 postnuptial agreement. (Ex. P-2).

Pursuant to this agreement, in 2018 all AOK Real Estate properties were sold and proceeds totaling $259,519.98 were placed in separate Section 1031 exchange accounts for each party. (Ex. P-13). Husband's 1031 account contained $131,270.67. *Id.* Wife's account contained $128,249.31. (*Id*; N.T. 12/18/19, at 114). Pursuant to the terms of the 2018 postnuptial agreement, neither party was permitted to withdraw their 1031 exchange account funds without the agreement of both parties or by court order. (Ex. P-2). Despite this agreement, Husband withdrew the funds from his 1031 exchange account without an agreement or court order. (N.T. 01/07/19, at 7). Husband did not inform Wife or either parties' attorney of the withdrawal. *Id*, at 8.

At a hearing on November 30, 2018 a divorce hearing officer bifurcated the parties' divorce proceedings. He granted a divorce decree, but did not decide issues regarding property distribution, economic relief, or the parties' post-nuptial agreements, instead holding that "all issues arising

4

from or governed by said agreement[s] shall be addressed in motion court proceedings before a judge." (N.T. 7/3/19, at 12, lines 7-10). The divorce decree was entered on December 19, 2018. (N.T. 7/3/19, at 7).

Wife filed a contempt petition on September 27, 2018, and in an order dated January 7, 2019 the Honorable Diane Thompson granted the motion and found Husband in contempt for willfully and knowingly violating the 1031 account agreement by withdrawing funds without an agreement or court order. Judge Thompson ordered Husband to provide an accounting of any missing funds after depositing the funds remaining from his withdrawal into an escrow account with each parties' counsel acting as agent. (N.T. 01/07/19, at 21).

Wife filed a second petition for contempt on February 21, 2019 and a hearing was held before the Honorable Ourania Papademetriou on May 23, 2019. At the time of that hearing, Husband had not opened an escrow account nor had he deposited any funds. And although an accounting of the money withdrawn in violation of the March 19, 2018 order was provided, Husband did not comply with any other provisions of Judge Thompson's January 7, 2019 order. (N.T. 05/23/19, at 21-22). Husband did not appeal Judge Thompson's order. *Id*, at 10-11. Because Husband willfully violated Judge Thompson's order, Judge Papademetriou found

5

Husband in contempt of the January 7, 2019 order and in an order dated May 29, 2019, once again ordered Husband to deposit all money he received from the 1031 exchange account into an escrow account, with both parties' attorneys acting as agents. Still, no escrow account was created, and no funds were deposited. (N.T. 07/03/19, at 15). Wife did not withdraw her 1031 exchange account funds until permitted to do so by an order of this Court dated January 28, 2021.

Another hearing was held on July 3, 2019, before the Honorable Doris Pechkurow, who entered an order stating that disposition of all marital assets and economic interests were addressed in the two postnuptial agreements, and that the parties' disputes concerning those agreements and related matters would be addressed by a Judge in a *de novo* trial.

The *de novo* trial began in this Court on December 18, 2019. Also before this Court was wife's third contempt petition filed on November 22, 2019. The ensuing hearings were lengthy and highly adversarial. While Husband was testifying, two of his attorneys – in two separate hearings -- requested permission to withdraw their appearances "for ethical reasons." (N.T. 2/10/21, at 10). At nearly every opportunity, Husband unduly burdened the resources of the Court, unnecessarily inflated the time, effort, and costs incurred by Wife and her attorney, and thwarted the

6

administration of justice by failing to produce documents requested in discovery and which Husband claimed that he would provide or did provide, and by giving shifting and blatantly inconsistent testimony within and across hearings. For example, Husband provided hundreds of pages of documents including illegible receipts and duplicative documents in anticipation of the initial hearing on December 18, 2019. Cross-examination regarding these documents was extensive and consumed hours of the court's time across multiple hearings. (N.T. 12/18/19). When cross-examination regarding these documents continued at a hearing on September 10, 2020 Husband testified regarding the hundreds of pages of voluminous exhibits in multiple three-ring binders that he had provided, "Oh, no, none of that is admissible, Your Honor. That book in particular, you can throw away." (N.T. 9/10/20, at 26-27).

On July 20, 2022 this Court entered an order resolving all economic claims between the parties, resolving Husband's petition for special relief filed May 22, 2019 and resolving Wife's petition for contempt and special relief filed November 22, 2019. Husband was ordered to pay Wife $229,203.50 for marital assets and debts. Husband owed Wife $233,236.10, however this amount was reduced by $4,032.60 that Wife

7

owed Husband. Husband was ordered to pay Wife's attorney $50,000.00 in counsel fees.

## III.   STANDARD OF REVIEW

The Superior Court's standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. *Cook v. Cook*, 186 A.3d 105, 22 (Pa. Super 2018). "An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence." *Smith v. Smith*, 904 A.2d 15, 18 (Pa. Super. 2006) (quoting *McCoy v. McCoy*, 888 A.2d 906, 908 (Pa. Super. 2005). In the context of distribution of marital property, the trial court has the authority to divide the award as the equities in each case may require. *Mercatell v. Mercatell*, 854 A.2d 609, 611 (Pa. Super. 2004). As such, awards of counsel fees and property distribution are "within the sound discretion of the trial court and will not be disturbed absent an error of law or abuse of discretion." *Smith v. Smith*, 749 A.2d 921, 924 (Pa. Super. 2000).

As to issues of credibility and weight of the evidence, the Superior Court must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. *S.C.B. v. J.S.B.*, 218 A.3d 905, 913 (Pa. Super.

8

2019). Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. *Id.*

The Pennsylvania rules of appellate procedure provide that in an 1925(b) statement of errors, Husband must concisely identify each error with "sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P., Rule 1925(4)(b)(4). The Superior Court has further explained that a "concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all." *Com. v. Dowling*, 778 A.2d 683, 686 (Pa. Super. 2001). This is because a failure to adequately identify the issues hinders the trial court in its ability to provide the quality of legal analysis required for meaningful appellate review. *Id.* This is especially true where a court must "guess at what issues an Appellant is appealing." *Com. v. Butler*, 756 A.2d 55, 57 (Pa. Super. 2000).

Additionally, pursuant to Section 3702 of the Divorce Code, "the court may allow a spouse ... reasonable counsel fees and expenses, and the Superior Court has held that in determining the propriety of an award of attorney's fees in a divorce proceeding, the purpose of such an award is to promote fair administration of justice." *Cook*, at 1028; 23 Pa.C.S. § 3702.

## IV.  MATTERS COMPLAINED OF ON APPEAL

9

In response to this Court's order to submit a concise statement of matters complained of on appeal pursuant to Rule 1925(b), Husband raised the following issues, which are repeated below verbatim.

1. The Court erred by ruling that Appellant Al-Kareem Q. Logan must pay $1,510.68 regarding the 1031 Exchange Accounts. The Post Nuptial Agreement, dated January 31, 2018, Section 2.1, Sales Proceeds, specifies what properties are to coincide with each exchange account. The Exchange Accounts were not evenly distributed. The Court erred by simply dividing the total of the exchange accounts by two in violation of Subsections A and B of Section 2.1. Five properties were sold. Three in one exchange. Two in the other.

2. The Court erred by Ordering Appellant Al-Kareem Q. Logan to pay Appellee Kimberly L. Thompson $8,072.94. The Monte Cristo Bank Account did not have a balance of $16,056.97 on the date of separation of October 26, 2016. AOK Real Estate had no money.

3. The Court erred by Ordering Appellant Al-Kareem Q. Logan to pay Appellee Kimberly L. Thompson $12,625.41. The $20,821.14 came from a loan Appellant Al-Kareem Q. Logan took.

4. The Court erred by Ordering Appellant Al-Kareem Q. Logan to pay Appellee Kimberly L. Thompson $20,950.00. The parties did not have $41,900.00 value of personal property. Wife had no jewelry with a fair market value above $1,000.00. Wife had no proof. Husband produced receipts for jewelry totaling $3,000.00. There is no basis to support a value of $10,000.00 worth of tools.

5. The Court erred by Ordering Appellant Al-Kareem Q. Logan to pay Appellee Kimberly L. Thompson $35,704.00 for rental income. When the mortgages, rental repairs utility bills, property insurance, and renovation cost were subtracted from rental income there was a net loss. AOK Real Estate lost money as shown on all tax returns. The Court took all income from 2017 tax return for AOK Real Estate and did not consider expenses. The months in 2016 that are

10

subsequent to the date of separation and the total estimate that the Court stated was incorrect.

6. The Court erred by Ordering Appellant Al-Kareem Q. Logan to pay Appellee Kimberly L. Thompson $18,200.28 for what it stated was retained security deposits. Appellant Al-Kareem Q. Logan renovated all five properties. Both parties were behind in paying taxes as of the date of separation. In fact the Nassau Road property was going up for Sheriff's Sale as of the date of separation. The Court erred by absolving Kimberly L. Thompson for walking away from the properties and refusing to sell for two years causing all taxes utilities to increase.

7. The Court erred by Ordering Appellant Al-Kareem Q. Logan to pay Appellee Kimberly L. Thompson $88,829.39 to reimburse her for debts. The Prenuptial Agreement states that Appellant is to reimburse Appellee for business debts. The Court simply added up payments Appellee made in her bank statements without any reference to whether they applied to the terms of the Prenuptial Agreement as to debt owed for business use. Appellee Kimberly L. Thompson provided no documentation to confirm the amount she owed as of the date of separation. Appellee only provided information as to the total amount she paid. It can not be determined whether or not Appellee was making purchases post separation.

8. The Court erred by Ordering Appellant Al-Kareem Q. Logan to pay Appellee Kimberly L. Thompson $9,022.40 for Medical Bills. Appellant Al-Kareem Q. Logan provided no documentation from his employer the Philadelphia Gas Works that stated it could not determine the reason Appellee was removed from coverage as of October 1, 2016. There was no evidence that Appellant removed Appellee from coverage. It is standard procedure to notify an insured of a lapse in coverage.

9. The Court erred by Ordering Appellant Al-Kareem Q. Logan to pay Appellee Kimberly L. Thompson $2,000.00. Appellant never signed a move out contract. Appellee Kimberly L. Thompson produced a fictitious document that was never signed by Appellant. Appellee

11

Kimberly L. Thompson never produced a verification page for what she claimed Appellant Al-Kareem Q. Logan docusigned.

10. The Court erred by Ordering Appellant Al-Kareem Q. Logan to pay Appellee Kimberly L. Thompson $947.60. There was never a $947.60 overdraft fee. Appellee Kimberly L. Thompson had an auto deduction Appellee had on her checking account. Appellee Kimberly L. Thompson should have been responsible for the entire amount.

Kimberly L. Thompson $50,000.00 for the attorney fees of Appellee Kimberly L. Thompson. The fees allegedly incurred were excessive. Furthermore the Postnuptial Agreement limited attorney fees to $3,600.00. The Court erred by finding that appellant Al-Kareem Q. Logan showed a complete lack of candor and credibility. The Court further erred in finding that Appellant Al-Kareem Q. Logan caused most of the legal fees of Appellee Thompson. The jointly owned five properties values were supposed to be sold in 2016. The lack of action by Appellee Kimberly L. Thompson caused the marital assets to be eroded for a two year period leading up to the sale.

The Court compounded the error by stating that two attorneys sought to withdraw citing unspecified ethical reasons. The Court never received evidence as to any factual basis for a so-called ethical reason.

(There are no issues numbered 11 through 14 in Husband's 1925b statement.)

15. The Court erred by Ordering Appellant Al-Kareem Q. Logan to pay Appellee Kimberly L. Thompson a total of $283,236.10 for the aforesaid reasons. Additionally the Court never credited the $129,000 that was in the account that Appellee Kimberly L. Thompson was allowed to withdraw. Appellee Kimberly L. Thompson also was never made to pay her share of the capital gains taxes because she caused the exchange to fail.

Appellee Kimberly L. Thompson owes Appellant Al-Kareem Q. Logan over fifty thousand dollars for the renovations and payments Appellant Al-Kareem Q. Logan made to cover the two years

12

Appellee Kimberly L. Thompson waited to go through with the sales.

Appellee Kimberly L. Thompson owed Appellant Al-Kareem Q. Logan one hundred thousand for capital gains because Appellee Kimberly L. Thompson refused to conduct the 1031 exchange. Appellant Al-Kareem Q. Logan suffered an additional twenty thousand dollars in losses due to Appellee Kimberly L. Thompson not allowing Appellant Al-Kareem Q. Logan to list and sell four out of five properties.

## V. **DISCUSSION**

All of Husband's allegations lack merit or are waived, and the Superior Court should affirm this Court's order dated July 20, 2022. It is clear from a reading of Husband's 1925(b) statement that his allegations of error are unduly wordy, lengthy, and most certainly are not concise. Moreover, many of the issues identified by Husband contain multiple sub-issues.

Before undertaking an analysis of the merits of issues raised on appeal, an appellate court must first determine whether the Appellant has properly preserved the issues for appellate review. *Kanter v. Epstein*, 866 A.2d 394 (Pa. Super. 2004). Our Supreme Court has held that while the number of issues raised in a Rule 1925(b) statement does not, without more, provide a basis upon which to deny appellate review, all issues can

13

be deemed to be waived where there was an attempt to thwart the appellate process. *Eiser v. Brown & Williamson Tobacco Corp.*, 595 Pa. 366, 9387 A.2d 417 (2007). "Even if the trial court correctly guesses the issues Appellant rais[es] on appeal and writes an opinion pursuant to that supposition the issue[s] [are] still waived." *Commonwealth v. Heggins*, 809 A.2d 908, 911 (Pa. Super. 2002).

In the present case, all of the issues Husband raises are lengthy, consisting of one or more paragraphs for each issue, rather than a concise statement as required by the Rule of Appellate Procedure. In fact, Husband's issues numbered 10 and 15 are so long and convoluted -- consisting of three paragraphs each containing issues and sub-issues -- that it would be unfair to the Court, and to the opposing party, to allow Husband to raise them as they are worded. Such lengthy and unconcise statements are an attempt to thwart the appellate process and should lead to a finding of waiver of these issues on appeal. This Court will nevertheless do its best to attempt to address each of Husband's issues.

1. **This Court did not err when it ordered Husband to pay wife $1,510.68 to compensate her for money he took from the 1031 exchange account.**

14

In his first allegation of error, Husband argues this Court erred by ruling that Husband must pay $1,510.68 to compensate for uneven distribution of the parties' 1031 exchange accounts. Husband argues that the post-nuptial agreement signed by the parties specifies the manner of distribution, that they were not evenly distributed, and that by dividing the total of the exchange accounts equally, this Court violated the post-nuptial agreement. This argument lacks merit.

The postnuptial agreement dated February 2016 specifies that in the event of separation, each party will be entitled to fifty percent of the net equity of the parties' shared property, regardless of the initial or ongoing proportion of each party's investment, unless the parties have otherwise agreed in writing. (Ex. P-1). Husband relies on the subsequent postnuptial agreement executed January 31, 2018 which outlines that the proceeds from three properties owned by the parties are to be placed in a 1031 exchange account for Husband and the proceeds from two different properties were to be placed in a 1031 exchange account for Wife. However, Husband violated this agreement by withdrawing the funds from his exchange account without agreement by the parties or a court order. This alone entitles the trial court to make an award to Wife of $1,510.68 in the interest of equity.

15

Additionally, the Superior Court has held that when there is ambiguity within an agreement, the ambiguity shall be construed against the drafter, a fact which was agreed upon and acknowledged at trial. (N.T. 02/10/21, at 7); and see *Windows v. Erie Insurance Exchange*, 161 A.3d 953, 957 (Pa Super. 2017) (holding that where the language of a contract is ambiguous, the provision is to be construed against the drafter – a principal of legal construction otherwise known as *contra proferentum*). Husband and his attorneys drafted both postnuptial agreements. Article two of the January postnuptial agreement purports to govern liquidation of marital property and no monetary values are expressly stated for the five marital properties to be distributed. Taken together with the February 2016 postnuptial agreement, by which each party was to be entitled to fifty percent of the net equity of the parties' shared property, this Court concludes that the proceeds from the five properties enumerated in article two were agreed to be evenly distributed.

This conclusion is supported by the fact that the sale of the properties very nearly did achieve this result, with three properties grossing $131,270.67, and two more valuable properties grossing $128,249.31. Construing the agreements against Husband, and with Husband's repeated disregard for the provisions of the January 31, 2018 agreement he now

16

seeks to enforce, it is well within this Court's discretion to order that these proceeds be distributed evenly between husband and wife.

**2. This Court did not err when it ordered Husband to pay Wife $8,072.94 to pay her for her share of the AOK Real Estate Univest account.**

Husband claims this Court erred when it ordered Husband to pay Wife $8,072.94 from the AOK Real Estate Univest account. Without any reference to the record, Husband now claims that the "Monte Cristo Bank Account" did not have a balance of $16,056.97 on the date of separation and that "AOK Real Estate had no money" on that date. (Husband's Statement, page 2). Because this claim is factually wrong and has no support in the record, it should be rejected.

The evidence – including exhibits and testimony -- proved that three separate accounts – an AOK Real Estate Univest account, a Wells Fargo 6340 Account, and a Monte Cristo Real Estate Account, had a combined balance of $16,145.88 on the date of separation. At trial on April 29, 2021, Husband acknowledged that the parties' date of separation was October 26, 2016. (N.T. 04/29/21, at 144). He then acknowledged that as of October 31, 2016 the Wells Fargo account ending in 6340 had a balance of $60.00, the AOK Real Estate account at Univest had a balance of

17

$2,927.00, and the Monte Cristo account at Philadelphia Federal Credit Union had a balance of $15,601.34. (N.T. 04/29/21, at 145-146). Upon examining the bank account records in Exhibit 50, the closest balances this Court could discern as of the date of separation, October 26, 2016, were $45.96 in the AOK Real Estate Univest account, $16,056.97 in the Monte Cristo Real Estate account, and $42.95 in the Wells Fargo Account ending in 6340. (Ex. 50).

Based on this evidence, this Court properly found that these accounts combined contained $16,145.88 on the date of separation, and ordered Husband to pay half that amount, which was $8,072.94. The Superior Court should defer to this Court's assessment of credibility and assessment of testimony and evidence, and no relief is due.

3. **This Court did not err when it ordered Husband to pay wife $12,625.41 to pay her for her share of the AOK Real Estate Philadelphia Federal Credit Union account.**

Husband next argues this Court erred in ordering him to pay $12,625.41 because "[t]he $20,821.14 came from a loan Husband Al-Kareem Q. Logan took." (Statement of Errors, at 2). Husband does not specify what $20,821.14 is referenced, points to no evidence in the record that would support his claim that those funds were from a loan, and fails to

18

elucidate why the fact that the funds may have been from a loan means that this Court erred in its decision. As stated previously, Husband had multiple years of discovery and hearings to submit evidence as to any personal loans that he made to the marital business, and he repeatedly failed to present accurate and complete documentation. (N.T. 09/10/20, at 98-99; N.T. 02/10/21, at 38, 113-114). This statement of error therefore is vague to the point of leaving the court guessing as to what error of law or fact is alleged, therefore fails to meet the requirements of Pa.R.A.P. 1925(b), and should provide no basis for relief.

Assuming in arguendo that Husband is referencing $20,821.14 that he transferred from a marital bank account, the AOK Real Estate account at Philadelphia Federal Credit Union, to two separate accounts over which Wife had no control, Husband raises no issue with this Court's factual findings regarding those transactions. Husband does not dispute that but for Husband's hurried, unexplained withdrawal of funds from marital accounts, the total balance of the two bank accounts on the date of separation would be $25,250.83, half of which this Court ordered Husband pay to Wife. The record supports this Court's finding that the AOK Real Estate account and Monte Cristo account were marital business accounts, and therefore these funds were required to be evenly distributed between

19

husband and wife. No relief is due. (N.T. 12/18/19, at 65; N.T. 04/29/21, at 145-146, N.T. 06/23/21, at 26-27; Ex. P-30).

**4. This Court did not err when it ordered Husband to pay Wife $20,950.00. for her share of $41,900.00 worth of personal property.**

In his fourth allegation of error, Husband claims this Court erred in ordering payment to Wife of $20,950.00. Husband's argument is essentially that there is an insufficient evidentiary basis for this Court's determinations that the parties had $41,900.00 worth of personal property. In support of his argument, Husband contends that Wife did not submit proof of the value of marital jewelry and that there is no basis to support a valuation of tools at $10,000.00.

At a hearing on February 2, 2021, Husband was asked how much tools were worth that he claimed to be paying $1,460 per month to store at a property addressed 391 Cliveden Street. (N.T. 02/10/21, at 48). Husband responded, "More than $10,000". *Id.* This Court found this testimony credible. This Court also heard testimony as to the value of vehicles, jewelry, luxury eyewear, and marital property retained by Husband when Wife left the marital residence.

The parties' real estate business, AOK Real Estate, purchased a Ford "box truck" for $3,000 that had an estimated value of $1,900.00 on the

20

date of separation. (N.T. 06/23/21, at 40). A Dodge Ram pickup truck was leased and subsequently purchased in the name of AOK Real Estate. (N.T. 04/29/21, at 19; Ex. 53). Despite Husband's bald assertion that despite jewelry purchases on Paypal statements worth hundreds of dollars, he "[doesn't] know of any jewelry that costs less than thousands of dollars," which this Court found not credible, credible evidence was submitted to prove that the marital assets included at least $3,943 worth of jewelry. (N.T. 04/29/21, at 65). AOK Real Estate also had business property retained by Husband including furniture, computers, a scanner, and a printer. *Id,* at 54. Wife estimated that $30,000 worth of property purchased together remained in the marital home, including marital jewelry. (N.T. 06/23/21, at 50). This Court found Wife's testimony regarding that valuation to be credible.

Accordingly, this Court did not abuse its discretion by ordering Husband to pay half of $41,900.00 ($20,950.00), the total value of the parties' personal property on the date of separation.

**5. This Court did not err when it ordered Husband to pay Wife $35,704.00 for her share of rental income generated by the parties' marital properties and real estate business after the date of separation.**

21

In his fifth allegation of error, Husband argues that this Court erred in ordering him to pay $35,704.00 because of rental income generated by the parties' marital properties and real estate business after the date of separation. Rather that pointing to specific evidence or points in the record by which an appellate court could find for Husband and reject the factual findings of this Court, Husband makes the conclusory, unsupported claims that the couple's business generated a net loss which was indicated on tax returns, that the court failed to consider expenses, miscalculated the months between the couple's separation and execution of a post-nuptial agreement, and in short, that this Court's total estimation is "incorrect."

Husband's argument has no support in the record. Testimony at trial proved that Husband had diverted all incoming rental payments from the marital business account into his personal accounts (N.T. 09/10/20, at 153-155; 233-234). Husband also failed to follow a court order compelling Husband to give Wife an accounting of all receipts regarding the business and be provided access to all matters regarding the business, all software and operating systems, user names and passwords, bank accounts, keys, and tenant information. (N.T. 06/23/21, at 24). Therefore, since the means of producing an entirely accurate accounting of the rental income and expenses for the marital property remained exclusively in Husband's

22

control, and since Husband obfuscated the business's income and expenses through inaccurate and incomplete discovery, this Court was required to make the best estimation possible of rental income derived from the marital businesses.

At trial, Husband's testimony regarding rental income and that the businesses made no profit were not credible. Husband claimed some deposits could be from rent, but then attempted to reverse his testimony and say he couldn't explain them or where they came from. (N.T. 09/10/20, at 115-120). Looking at Husband's January 2017 Wells Fargo Account in Exhibit 48, there was a rental income of $36,025.36 for that month, but this amount was comingled with funds from rent, contracting work, and PGW income. *Id.,* at 168-169. When trying to explain how he collected rents, Husband could not keep his story straight. He first testified that all rent was collected through an application called ClearNow, but later admitted that certain tenants paid through other means, like Paypal, which were not included in the rental income summaries Husband provided to the Court. *Id,* at 215-216; N.T. 02/10/21, at 75.

Husband could not point to any portion of rental income that he shared with Wife after separation, and admitted that he could point to no such distribution because it didn't exist. (N.T. 09/10/20, at 238). Husband

23

admitted that Wife got no rental income from marital properties for February and March of 2017. (N.T. 02/10/21, at 147). The post-nuptial agreement under which Wife resigned from AOK Real Estate was not implemented until 2018, and Wife is entitled to compensation until that date. For the same reason, Husband's allegation that this Court wrongly considered months of income in 2016 after the date of separation is unavailing.

It was clear to this Court that Husband lied about which tenants and payments were from rental income from marital properties and that the "income summaries" that he prepared for this litigation were not based on facts. For example, he claimed he knew a Paypal deposit was not from an AOK Real Estate tenant, but then admitted that the tenant, Reed Myers, lived at the parties' 392 East Cliveden property. (N.T. 02/10/21, at 75-76). He claimed two tenants in March of 2017 paid him rent for the same marital property in the amounts of $2,000 and $2,500, but did not list these payments on his rental income summaries. *Id.* at 87-88.

Husband claims this court did not consider expenses and that "AOK Real Estate lost money as shown on all tax returns". (Husband's Statement, at 2). As discussed, Husband provided a voluminous collection of receipts to prove expenses, but he could not credibly testify as to which receipts were for marital property, separate personal expenses, or

24

expenses from Husband's contracting work. He admitted he submitted a receipt for a non-marital property and had claimed it as a marital property expense. (N.T. 06/23/21, at 176). He submitted receipts which were illegible and counted some of them twice. (*Id*, at 110-111, 200-201; N.T. 12/18/19, at 225-226). At one point, he claimed that he never incurred or submitted expenses for a non-marital property he was working on, the Larchwood Avenue property, and then claimed that he did incur expenses for this property "just for this time period". *Id,* at 194. Then he tried to claim that Home Depot obviously made a mistake in issuing a receipt for a property marked "Larchwood" which he then submitted as a marital property expense and now asks the Superior Court to believe entitles him to relief. *Id*. He also submitted receipts for snow and ice removal from the non-martial Larchwood Avenue property. *Id*, at 237-238.

Husband testified he would provide "before-and-after" pictures as documentation of the renovations he performed on marital properties but failed to do so. (N.T. 06/23/21, at 152). Husband now asks the Superior Court to consider utility bills but changed his testimony on the stand as to whether tenants or AOK Real Estate was responsible for utilities. (N.T. 09/10/20, at 150-151). Ultimately, when pressed after multiple hearings about the inaccuracy of his accounting of expenses, rental income, and

25

retained security deposits, Husband, as previously stated, told this Court, "[o]h, no, none of that is admissible, Your Honor. That book in particular, you can throw away." (N.T. 9/10/20, at 26-27).

As for claims regarding AOK's tax returns and losses, they are inaccurate for the reasons stated above in that expenses and revenue were inaccurately reported. Due to the comingled nature of marital business funds and Husband's personal funds after Wife was excluded from the business, there was never a clear accounting of what monies were used for AOK property, for non-marital property, and what money went into Husband's pocket. This is supported by evidence that Husband uniformly reported less income for each property when comparing 2014 rental income and 2017 income reported by AOK Real Estate. (Ex. 56; Ex. 58). What's more, if depreciation deductions are added back into the 2017 tax return, a more accurate portrayal of the money received from each rental property, each property had a profit. (Ex. 58). Adding the depreciation value, Manton Street had a profit of $3,944.00. (N.T. 04/29/21, at 152). Willows Avenue with deduction made $10,331.00. *Id.* Nassau Road made $1,199 with deduction. *Id*, at 153. The Pennsgrove property made a profit of $13,374 with deduction. *Id,* at 154.

Ultimately, lacking any credible testimony from Husband regarding true rental income or any credible evidence regarding what AOK Real Estate accurately expended in the months between the date of separation in 2016 and Wife's resignation from the business by agreement in 2018, this Court was well within its discretion to rely on the 2017 AOK Real Estate Tax Return in attempting to discern what rental income should be distributed to Wife, with $31,408 being the amount reported.

The months in 2016 after separation in October (three months) and one month in January of 2018 when the post-nuptial agreement was signed were estimated within this Court's discretion to be worth $10,000, or approximately one-third of the income used for 2017. Because Husband continuously failed to provide a credible explanation for large deposits in his accounts, like a deposit for $86,600.00 in December 2017 and over $76,000.00 in deposits in October 2018, which this Court deemed included monies derived from AOK Rental income, it was in this Court's discretion to assess an additional $30,000.00 in rental income. Therefore, with these assessments combined, it was not an abuse of discretion for this Court to order Husband to pay half of $71,408.00 in rental income, or $35,704.00.

**6. This Court did not err when it ordered Husband to pay Wife $18,200.28 in retained security deposits from renters because he retained those security deposits from marital rental properties.**

Husband claims this Court erred in ordering him to pay Wife $18,200.28 in retained security deposits from renters because he retained those security deposits from marital rental properties. Rather than specifying how the court erred in finding that Husband retained security deposits, Husband makes several claims regarding renovations, taxes owed at the time of separation, and that Wife "walked away" from properties, refused to sell them, and caused "all taxes utilities to increase." (Husband's Statement, at 3).

Husband's argument is deficient on its face. Husband does not challenge any of this Court's specific findings regarding the security deposits he retained.

Responding to what Husband stated in his Statement of Matters Complained Of, the renovations he cites have been addressed already. Husband claims to have renovated all five properties, but as discussed, when pressed for documentation, Husband failed to provide accurate or reliable documentation for what was completed at each property. Instead, he submitting a plethora of comingled receipts for marital and non-marital property. Husband specifically asked the Court to disregard and "throw

28

away" the documentation he did submit regarding his alleged repairs. (N.T. 09/10/20, at 226-227). Husband testified he would provide before-and-after pictures as documentation of the renovation work performed on marital properties but failed to do so. (N.T. 06/23/21, at 152).

What's more, Paragraph 16 of the parties' 2016 postnuptial agreement states, "Parties agree that the investment of time or labor with respect to personal service in the property of the other, or otherwise, will be deemed to have been made gratuitously, and without expectation or right of compensation unless agreed to the contrary in writing." (N.T. 09/10/20, at 136; Ex. P-2). Clearly this provision encompassed the fruit of Husband's labor on the marital properties.

Regarding taxes owed at the time of separation and Husband's statement that the parties' Nassau Road property was going up for Sherriff's sale at the date of separation, evidence at trial showed that, as will be discussed in section 10 *infra*, Wife over-drafted on the parties' Santander bank account attempting to pay the real estate taxes for this property. *Id*, at 233-234. This occurred after Husband had excluded Wife from all business accounts, diverted business income into his personal accounts, and then ignored a court order compelling him to provide Wife with access to all business-related accounts.

29

Further, credible testimony at trial showed that Husband failed to inform Wife of the hearings related to the Sherriff's sale, instead accepting service for her at the former marital residence and speaking on her behalf at the hearing despite excluding Wife from the business. (N.T. 09/10/20, at 20-25; Ex. 17). Indeed, the 2017 AOK Real Estate tax return contains that Husband owned 100% of the business. (Ex. 58). Because she was excluded from the business, Wife could not pay refuse fees or water bills Husband now asks the Superior Court to credit. Therefore, every piece of evidence indicates that Husband, not Wife, is solely responsible for the delinquency in the parties' taxes and the state of the utility bills related to the property.

Husband argues this Court "rewarded" Wife for walking away from the properties and refusing to sell properties, ignoring the facts that it was Wife who was excluded from the business prior to her formal resignation in 2018, and that it was Husband, not Wife, whose attorneys drafted the agreements by which property would be distributed and that Husband ultimately was held in contempt three times for breaking these agreements.

Instead, this Court reached its findings by properly considering the sales proceeds from the marital properties and discerning what security deposits from those properties had been retained. Due to a judgment

30

against the property, a praecipe filing, and real estate taxes owed for 2017 and 2018, the sale value of the Nassau Road property was reduced by $15,366.77. (Ex. 3; Ex. 4A) Due to overdue refuse and utility bills, Husband caused the Cliveden Street property sale value to be reduced by $1,593.75. (Ex. 4B). The sale proceeds for the Willows Avenue property were reduced by $5,094.14 due to overdue taxes, refuse fees, and water bills. (Ex. 4C). The Manton Street property value was reduced by $1,572.88 for unpaid real estate taxes. (Ex. 4D). The Pennsgrove Avenue property was reduced by $1,933.13 for overdue real estate taxes and a separate tax lien. (Ex. 4E).

Additionally, security deposits retained by Husband for the Cliveden Street ($3,300.00) and Willows Avenue (1,540.00) properties totaled $4,840.00, as evidenced by the properties' closing disclosures. (Ex. 4B; Ex. 4C). Lastly, Husband received $3,000.00 from a tax revenue claim from the sale of the Manton Street home. (Ex. 4D). The sum of these totals is $33,400.67, and this Court was within its discretion to order Husband to pay Wife one half of the sum of that amount, or $16,700.33. Accordingly, no relief is due.

31

**7. This Court did not err when it ordered Husband to pay Wife $88,829.39 to reimburse her for loan and credit card payments she made after the date of separation.**

Husband argues this Court erred in ordering Husband to pay Wife $88,829.39 to reimburse her for loan and credit card payments she made after the date of separation. Husband's argument relies on the parties' 2016 postnuptial agreement which states that Husband is required to reimburse Wife for business expenses, but that this Court instead "simply added up payments" and did not distinguish between business and personal debt. Husband claims there was insufficient documentation to establish what was owed at the time of separation and that "it cannot be determined whether or not Wife was making purchases post separation."

The irony is not lost on this Court that Husband alleges error based on this Court somehow improperly conflating business and personal expenses, when after days of cross-examination and shifting false testimony it came to light that Husband had done the same and asked this Court not to examine any of that evidence. However, this Court was well within its discretion in ordering Husband to reimburse Wife for debts she paid but that Husband was responsible for under the parties' 2016 and 2018 postnuptial agreements.

Husband concedes in his allegation of errors that under the 2016 postnuptial agreement, he must reimburse Wife for shared debts. (Husband's Statement, at 3; Ex. P-1). Nothing in the 2018 postnuptial alters that responsibility, instead reiterating that personal debt associated with the properties must be paid in accordance with the 2016 agreement. (Ex. P-2, at ¶ D). Schedule A of the 2016 agreement lists as shared debt many different credit cards and loans. (Ex. P-1, Schedule A).

Evidence and testimony at trial showed that Wife paid all debts listed in Schedule A at great personal expense and that ultimately, she paid the remaining shared debts only when she was able to liquidate her 1031 Exchange Account by an order of this Court. (N.T. 06/23/21, at 56, 62-71; Ex. 27, 31, 30, 32, 33, 34, 35, 36, 37). These expenses included $5,891.78 for a loan from Philadelphia Federal Credit Union. (Ex. 27). She paid $10,562.40 in payments to a credit card through Bank of America. (Ex. 31).

Wife paid $20,905.63 in payments for a loan through American Heritage Credit Union. (Ex. 30). Payments towards a Home Depot credit card totaled $14,622.76 (Ex. 32). A Lowe's credit card totaled $2,481.35 (Ex. 33). A Chase Bank credit card totaled $8,902.59. (Ex. 34). A Susquehanna Bank credit card totaled $11,564.91. (Ex. 35). A Discover

33

credit card totaled $8,920.01. (Ex. 36). Lastly, a Barclay's credit card totaled $4,977.96. (Ex. 37).

Husband acknowledges that Wife did provide this information regarding the total amounts she paid for the business. (Husband's Statement, at 3). This Court found Wife's testimony and documentation in this regard to be credible, and pursuant to the parties' 2016 agreement, this Court properly ordered Husband to reimburse Wife for the entire amount, $88,829.39. No relief is due.

8. **This Court did not err when it ordered Husband to pay Wife $9,022.40 for medical bills after she was removed from his employer-provided health insurance.**

Husband argues this Court erred by ordering Husband to pay Wife $9,022.40 for medical bills. In support, Husband states that he provided documentation from Philadelphia Gas Works that stated it could not determine the reason Wife was removed from coverage on October 1, 2016. Husband claims there is no evidence that Husband removed Wife from coverage. Husband attempts to offer new evidence not presented at trial by claiming that, "It is standard procedure to notify an insured of a lapse in coverage", without citing the source of this information or its relevance to his allegation of error. (Statement of Errors, at 4).

34

If Husband had made a cursory review of the record, it would have been clear this allegation of error lacks merit. No information regarding the "standard procedure" for notification of a lapse in coverage was ever introduced, and therefore is unavailing on appeal. Exhibit W-23 supports the award of $9,022.40, with bills for services related to pregnancy occurring on April 16, 2017 for $5,815.40, on April 15, 2017 for $1,260.00, on April 15, 2017 for $260.00, and with additional fees for these bills totaling $1,787. (Ex. W-23).

At trial, Husband first attempted to claim that Wife was never covered under the medical insurance he receives through his job at Philadelphia Gas Works (PGW). (N.T. 04/29/21, at 60). He also contended that he did not recall his wife ever being pregnant, then acknowledged she had informed him. *Id.* None of Husband's testimony was credible. Exhibit W-23 shows that Wife was covered under Husband's insurance through PGW from October 1, 2015 until it was canceled on October 1, 2016. (Ex. W-23, at 1). Husband attempted to claim he was not responsible for removing his pregnant wife from his work medical insurance policy by reading into the record a letter from his employer stating that "PGW has no records relating to the reason for the removal of Kimberly Thompson from PGW sponsored benefits." (N.T. 04/29/21, at 69).

35

While this Court finds it credible that PGW had no records relating to the reason Wife was removed from coverage, it did not find Husband, who had just testified that she had never been included on his work insurance at all, credible in his claim that he was not the reason for the removal. Instead, this Court found Wife credible when she testified that she had medical bills incurred when she lost her baby and that she had been excluded from Husband's PGW insurance but never informed. (N.T. 06/23/21, at 44). This Court also found Wife's Exhibit 23 to be credible, including a letter dated February 21, 2017 from Wife's employer stating that because she had opted out of coverage (during the period she believed she was covered through Husband's insurance), she could no longer be added to their coverage until the next enrollment period. (Ex. W-23; N.T. 02/21/17).

For these reasons, this Court did not err when it ordered Husband to pay the total amount of Wife's medical bills for her pregnancy, $9,022.40.

### 9. This Court did not err when it ordered Husband to pay Wife $2,000.00 that she paid for a "move-out" contract.

In his ninth allegation of error, Husband argues this court erred by ordering Husband to pay Wife $2,000.00, an amount derived from a move out contract the parties signed in January of 2016. Husband argues that he never signed a move out contract, Wife produced a "fictitious document

36

that was never signed by Husband", and that Wife "never produced a verification page for what she claimed Husband docu-signed". (Statement of Errors, at 4).

This argument lacks merit and this Court's order should be affirmed. This Court found Wife's testimony regarding Exhibit 25, the move-out contract, to be credible. Credible testimony at trial supported its admission, and no objection was made at trial as to its authenticity. (N.T. 06/23/21, at 43). Wife testified credibly that Husband never followed through on this contract. *Id.* No questions as to its authenticity or Husband's fulfillment of the contract were raised on cross-examination. No subsequent motions were filed challenging its authenticity, and a "verification page" was never requested. Therefore, ample evidence in the record supports this Court's award to Wife of $2,000, the sum of which would place her in the same position as if the contract had been fulfilled.

**10. This Court did not err when it ordered Husband to pay Wife $947.60 for a check overdraft fee.**

In his tenth allegation of error, Husband argues this Court erred by ordering Husband to pay Wife $947.60 for an overdraft fee on a checking account. This allegation lacks any factual basis, is deficient on its face, and

should be denied and deemed waived. Nevertheless, this Court will attempt to address a somewhat related issue.

Section 14 of this Court's order dated July 20, 2022 states, "Husband must pay to wife the sum of $450.00 for the Santander Bank Overdraft. Husband must reimburse Wife for his half of the $900.00 overdraft fee incurred on their shared bank account." (7/20/22 Order, page 5). Therefore, there is literally no factual basis for the claim that this Court erred Husband to pay $947.60. Husband did not claim that this Court erred in ruling that Husband owed $450.00 for an overdraft fee incurred on a shared bank account, but if that is somehow the issue he attempts to raise, there is ample evidence in the record to support that ruling.

Overwhelming evidence shows that Husband, not Wife's actions caused overdraft fees on the parties' marital business account at Santander Bank. As discussed, testimony at trial proved that Appellant had diverted all incoming rental payments from the marital business account into his personal accounts. (N.T. 09/10/20, at 153-155; 233-234). Wife over-drafted on the parties' Santander account attempting to pay a shared expense, the real estate taxes for a property on Nassau Road. *Id*, at 233-234. Had Appellant not diverted the parties' rental income, there would have been no overdraft on their shared bank account. This was a shared

38

account and the overdraft fee is therefore a shared expense. This Court did not abuse its discretion by ordering Appellant to pay to Wife half of the fees incurred due to over-drafting the parties' shared account.

### 11 through 14. These arguments are missing from Husband's 1925(b) statement of matters complained of on appeal.

The statement of matter's complained of on appeal submitted by Husband, though paginated in correct sequence, does not contain any allegations numbered 11, 12, 13 or 14. It is not clear if this error is the result of sloppy drafting, editing, or some other reason. An appellate court cannot consider issues that are not properly preserved on appeal. Pursuant to Pa.R.A.P. 1925(b), any issue not properly included in the concise statement, timely filed, and served, is waived.

An unnumbered remnant that appears to be a part of Issue 14 contains a reference to attorney's fees but is not fully developed. Though paginated in correct sequence from page 4 to page 5, page 5 of Husband's statement of matter's complained of begins mid-sentence and does not relate whatsoever to the sentence before it on page 4.[1] To the extent that

---

[1] Page 4 ends on alleged error 10 relating to an overdraft fee. It's final sentence states, "Wife Kimberly L. Thompson should have been responsible for the entire amount." Page 5 illogically begins mid-sentence in a non-sequitur, stating "Kimberly L. Thompson $50,000 for the attorney fees of Wife Kimberly L. Thompson."

this allegation is not properly enumerated and is blatantly incomplete, it cannot be properly considered, lacks merit, and should be deemed waived. However, since the next alleged error on page 5 is numbered 15, this Court shall assume in arguendo that Husband meant to have this text be considered allegation 14 and relate to this Court's order compelling Husband to pay Wife $50,000 worth of attorney's fees.

As previously stated, the Superior Court has held that in determining the propriety of an award of attorney's fees in a divorce proceeding, the purpose of such an award is to promote fair administration of justice. *Cook v. Cook*, at 1028; 23 Pa.C.S. § 3702.

In the unlabeled section before allegation 15, Husband claims that "the Postnuptial Agreement limited attorney fees to $3,600." (Husband's Statement, at 5). Assuming in arguendo Husband refers to the parties' January 2018 postnuptial, Section 2.2(c) of that agreement states, "Husband agrees to pay half of Wife's total attorney's fee for representation by Wendy Glazer, Esq., not to exceed $3,600.00. Plaintiff's one-time payment referred to here does not represent or serve as his acceptance or acknowledgement to pay any of Wife's future attorney's fees whether incurred in this or any other matter." (Ex. P-2, at 6). By its plain language, it is clear that Section 2.2 does not represent an agreement as to future

40

attorney's fees incurred by Wife, but that Husband's one-time payment of $3,600 was made to cover half of Wife's attorney's fees up until the time of signing. What's more, the agreement contains no waiver of a claim for attorney's fees, which Husband acknowledged at trial. (N.T. 09/10/20, at 137).

After the 2018 postnuptial was signed, divorce litigation proceeded for an additional four years, Wife's attorney would have to file three petitions for contempt which were granted due to Husband's noncompliance with both the agreement and court orders, and generally, Appellant's lack of candor and truthfulness in these proceedings resulted in Wife incurring a high level of attorney's fees. As an illustrative example, Appellant sent a weblink of exhibits to Wife's attorney late at night on February 9, 2021 for a hearing the next day. (N.T. 04/29/21, at 213-215). This last-minute discovery, consisting of thousands of pages and containing many duplicate documents that had already been provided, necessitated hundreds of dollars in printing costs and many hours of the attorney's time as she had to go through and discern what was new about the exhibits and which documents had already been provided. *Id.*

This Court reviewed Wife's attorney's billing statements and found them to be credible. (Ex. W-28). As of April 1, 2021 Wife owed $58,245.57

in counsel fees and costs, and had already made payments totaling $18,300.00 in 2021. In light of multiple years that this litigation necessitated, the copying and printing costs, filing fees, transcript costs incurred, and the finding that Appellant was in contempt for a third time, this Court's award of $50,000 to Wife's attorney was not excessive. Such an amount promotes the fair administration of justice, and this Court's award should be affirmed.

**15. This Court did not err when it ordered Husband to pay Wife a total of $229,203.50.**

In the allegation of error numbered 15, Husband argues that this Court erred in ruling that Husband owes Wife a total of $283,236.10. For support, in addition to the errors alleged in allegations 1-14, Husband argues this Court failed to credit "$129,000 that was in the account that Wife Kimberly L. Thompson was allowed to withdraw" (Husband's Statement, at 5). Further, Husband argues that Wife was also "never made to pay her share of capital gains taxes because she caused the exchange to fail." Husband goes on to argue facts not properly before the Superior Court, stating that Wife owes Husband money for various reasons, none of which does Husband attempt argue is tied to any specific error made by this Court in its Order of July 20, 2022.

42

Allegation 15 should be waived first because it is facially inaccurate. This Court did not order Appellant to pay Wife $283,236.10. The sum of each provision of this Court's order that Appellant pay to Wife was $233,236.10. With a credit for $4,032.60 that Wife owes Appellant, this Court ordered Appellant to pay $229,203.50. (07/20/22 Order, at 6). What's more, to the extent Husband is asking an appellate court to deduct from the total the amounts alleged to be in error in allegations 1-14, those alleged errors are discussed above, lack merit, and this Court's order should be affirmed.

It appears that Husband is attempting to argue that this Court failed to credit the husband with "$129,000 that was in the account that Wife Kimberly Thompson was allowed to withdraw." To the extent that Husband fails to specify what account is at issue and fails to articulate why the money in this unspecified account should be a "credit" that would reduce the total amount owed by Husband, this argument is unclear, conclusory, entirely lacks merit, and this Court's order should be affirmed.

To the extent that the Superior Court finds Husband may be referencing the parties' 1031 Exchange Accounts, Husband's own 1925(b) statement of matters contradicts his argument and makes no sense. In allegation 1, Husband argued this Court erred in its calculation of the

43

proceeds of this account, meaning this Court clearly considered this account in its calculation of the total amount owed by Husband. Opposite of failing to credit Wife's withdrawal from that account, this Court properly found that Husband owed Wife $1,510.68 from the proceeds of that account because "Husband violated the order entered by Judge Holly Ford on March 19, 2018 when he withdrew his entire 1031 exchange without a court order or agreement [and since] the total in both 1031 exchange accounts was $259,519.98 and therefore each party was entitled to receive $129,759.99." (7/20/22 Order).

Because Wife only received $128,249.31 from her 1031 exchange account, this Court ordered Husband to pay Wife $1,510.68, which is the amount this Court included in reaching its ultimate calculation that Husband owed $233.236.10, which was then reduced by $4,032.60 due to the finding that Wife owed Husband that amount because of Wife's retirement account and personal assets. If this Court had failed to consider this account and included the "$129,000" figure Husband cites in its calculations, the total amount owed by Husband would have been $362,236.10.

What's more, by Husband's logic, Wife too would be entitled to a "credit" from the exchange account, meaning that this Court would have found that

44

the "credit" to each party would cancel each other out and as ultimately occurred, the full amount in the exchange accounts would not be included in this Court's calculation of the total award.

Overall, Husband's 1925(b) statement represents a thinly veiled attempt at relitigating issues this Court already heard during years of trial, with zero substance as to any errors of fact or law. Husband is entitled to no relief.

## VI.   CONCLUSION

For these reasons, this Court's order should be affirmed.

Mallios, J.

I hereby certify that the foregoing
is a true copy of the original as same
appears in the records of this Court this

date     11-14-2022

by:

Clerk of Court
Marco J. Capone, Esquire
Clerk of Family Court

45